OPINION
ALAN E. NORRIS, Circuit Judge.
Tennessee prisoner Brian Starks was sentenced to a mandatory term of life imprisonment for felony murder, as well as a consecutive term of eleven years for attempted especially aggravated robbery. Petitioner was seventeen years old when he received this sentence. He will be eligible for parole when he reaches seventy-seven. Because that age exceeds the life expectancy of African American males, especially those who have been incarcerated, petitioner contends that the sentence violates the Eighth Amendment in light of Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).
I.
The underlying facts that led to petitioner’s prosecution are not critical to the legal issue presented on appeal. A detailed summary of the unfortunate events can be found in the opinion of the Tennessee Court of Criminal Appeals. State v. Starks, 2003 WL 1877084, at *1 (Tenn. Crim. App. Apr. 15, 2003). Briefly, on January 18, 1999, petitioner and two friends went to a Nashville housing project to sell crack cocaine. Petitioner carried a gun. The victim, Julius Talley, approached the group to buy crack. Although they initially rebuffed Talley, the group subsequently attempted to rob him after he left the apartment of a known drug supplier. Talley told them he had neither money nor crack. Nonetheless, they pushed him to a dumpster and petitioner shot him several times.
The three individuals were charged with felony murder and attempted especially aggravated robbery. Only petitioner elected to go to trial and he was found guilty on both counts. As already mentioned, he received a mandatory life sentence for felony murder, Tenn. Code. Ann. § 39-13-204, which in Tennessee requires an individual to serve fifty-one years in prison' before eligibility for parole. The trial court also imposed a consecutive eleven-year term of incarceration for especially aggravated robbery. Tenn. Code Ann. § 39-13-403. As mentioned, petitioner will not be eligible *279 for parole until February 12, 2059, when he will be seventy-seven years old.
His convictions were affirmed on direct appeal. On June 23, 2011, petitioner filed a pro se habeas petition. After counsel was appointed, three amended petitions were filed. The district court denied relief on all claims. Starks v. Easterling, 2014 WL 4347593, at *11 (M.D. Term. Sept. 2, 2014). However, it granted a certificate of appeal-ability on one claim: whether the sentence violates the Eighth Amendment in light of Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Id, This appeal followed.
While the federal habeas proceedings were ongoing, petitioner filed a petition for post-conviction relief in state court, raising the Miller claim. The trial court denied relief and was affirmed by the court of criminal appeals. Permission to appeal was denied by the Tennessee Supreme Court. These decisions preceded the denial of ha-beas relief in the district court.
II.
This court reviews the district court’s legal conclusions de novo and factual findings for clear error. Trimble v. Bobby, 804 F.3d 767, 773 (6th Cir. 2015). In this case, there is no factual dispute and we review de novo.
The Antiterrorism and Effective Death Penalty Act (“AEDPA”) applies in this case. If the claim was adjudicated on the merits in the state courts, a district court may not grant habeas relief unless the adjudication of the claim “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1).
As already noted, the Tennessee trial court and the court of criminal appeals addressed petitioner’s Eighth Amendment claim in post-conviction proceedings. Both courts reached the merits of the claim. The trial court read Miller narrowly: because petitioner did not receive a sentence that precluded parole, he had no viable claim. The court of criminal appeals agreed with this decision without further elaboration.
In the past decade, the Supreme Court has issued several opinions in addition to Miller that discuss the Eighth Amendment’s prohibition of cruel and unusual punishment as it applies to juvenile offenders. See, e.g., Roper v. Simmons, 543 U.S. 551, 573-74, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (execution of individuals who committed a capital crime when they were under eighteen constitutes cruel and unusual punishment); Graham v. Florida, 560 U.S. 48, 82, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (a sentence of life without parole for a juvenile offender who did not commit homicide violates the Eighth Amendment); Montgomery v. Louisiana, — U.S. —, 136 S.Ct. 718, 736, 193 L.Ed.2d 599 (2016) (holding that Miller applies retroactively).
These cases recognize that juvenile offenders have a lesser culpability than their adult counterparts, often lack maturity, and have an underdeveloped sense of responsibility, Graham, 560 U.S. at 72, 130 S.Ct. 2011; they are susceptible to negative influences, such as peer pressure, id.; they may have been subject to a dysfunctional upbringing, Miller, 132 S.Ct. at 2468; and, they are more amenable to rehabilitation because their characters are not as well formed as an adult’s, id. at 2464. Miller summed up its holding in these terms:
We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. Cf. Graham, 560 U.S. at [75], 130 S.Ct. at 2030 (“A State is not *280 required to guarantee eventual freedom,” but must provide “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation”). By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. Because that holding is sufficient to decide these cases, we do not consider Jackson’s and Miller’s alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in Roper, Graham, and this decision about children’s diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between “the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.” Roper, 543 U.S. at 573, 125 S.Ct. 1183; Graham, 560 U.S. at 68, 130 S.Ct. at 2026-27. Although we do not foreclose a sentencer’s ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.
Miller, 132 S.Ct. at 2469 (footnote omitted).
Because the Tennessee court of criminal appeals denied relief on the question before us, we must decide whether its adjudication “resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1).
The Tennessee Court of Criminal Appeals court read Miller to require that a defendant must be sentenced to life without the possibility of parole for it to apply.
Like the Tennessee courts, the warden argues that Miller applies only to those juveniles sentenced to life without the possibility of parole. Moreover, he contends that the Tennessee court decisions were not objectively unreasonable because courts that have construed Miller under similar circumstances have reached different conclusions. He refers us to a dissenting opinion from the denial of rehearing en banc in which the dissenter points out that—when construing Graham at least— courts are split about whether consecutive, fixed sentences resulting in a sentence that exceeds the defendant’s life expectancy is the functional equivalent of life without parole. Moore v. Biter, 742 F.3d 917, 920 (9th Cir. 2014).
In our view, the Supreme Court opinions that we cited earlier illustrate the Court’s growing unease with draconian sentences imposed upon juveniles, even for serious crimes. As this line of jurisprudence continues to evolve, it may well be that the Court one day holds that fixed-term sentences for juvenile offenders that are the functional equivalent of life without parole are unconstitutional, especially if the sentencing court has not taken the defendant’s youth into consideration. That said, it is not our role to predict future outcomes. Because the Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life, and given the fact that lower courts are divided about the scope of Miller, we hold that the Tennessee courts’ decisions were *281 not contrary to, or an unreasonable application of, clearly established federal law as defined by the Supreme Gourt. 28 U.S.C. § 2254(d)(1).
III.
The judgment of the district court is affirmed.