RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0298p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HOWARD ATKINS,

                *Petitioner-Appellant*,

     *v*.

GEORGIA CROWELL, Warden,

                *Respondent-Appellee*.

No. 18-6012

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:09-cv-02297—Sheryl H. Lipman, District Judge.

Decided and Filed:  December 17, 2019

Before:  COLE, Chief Judge; SILER and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Michael J. Stengel, MICHAEL J. STENGEL, P.C., Memphis, Tennessee, for Appellant.  Michael M. Stahl, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

     MURPHY, J., delivered the opinion of the court in which COLE, C.J., and SILER, J., joined.  COLE, C.J. (pp. 7–10), delivered a separate concurring opinion.

_____

## OPINION

_____

     MURPHY, Circuit Judge.  A Tennessee jury convicted Howard Atkins of murdering his stepfather in 2000 when he was just 16 years old.  A state court imposed a life sentence that (all now agree) renders Atkins eligible for release after at least 51 years' imprisonment.  *See Brown v. Jordan*, 563 S.W.3d 196, 197, 200–02 (Tenn. 2018) (discussing Tenn. Code Ann. § 40-35-

501(h)–(i)).  His conviction and sentence were affirmed on direct appeal.  *State v. Atkins*, No. W2001-02427-CCA-R3-CD, 2003 WL 21339263 (Tenn. Crim. App. May 16, 2003).

Years later, the Supreme Court held that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  *Miller v. Alabama*, 567 U.S. 460, 465 (2012).  (The Court concluded that *Miller* applies retroactively in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016).)  Atkins sought to benefit from *Miller* in state post-conviction proceedings.  He argued that the life sentence he received as a 16-year-old also qualified as a "cruel and unusual" punishment under the Eighth Amendment.  A state appellate court rejected his claim.  It distinguished *Miller* because, unlike the juveniles in that case, Atkins could be released after 51 years' imprisonment and so was "not serving a sentence of life without the possibility of parole."  Atkins then turned to the federal courts with his Eighth Amendment claim.  The district court denied relief too, but issued a certificate of appealability for us to consider whether the state court reasonably distinguished *Miller* under the governing standards for federal habeas relief in 28 U.S.C. § 2254(d)(1).

Section 2254(d)(1) prohibits a federal habeas court from upending a state criminal judgment unless a state court's rejection of a constitutional claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  The Supreme Court has repeatedly reminded the circuit courts that this statutory test "is difficult to meet."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation omitted).  The statute's "clearly established" language allows a court to grant relief based only on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions."  *Id.* (citation omitted).

So we must start by identifying *Miller*'s holding.  At first glance, that task looks easy because *Miller* expressly (and repeatedly) stated its holding.  The Court said at the outset: "[w]e therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  *Miller*, 567 U.S. at 465.  It later repeated the same message: "[w]e therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of

parole for juvenile offenders." *Id.* at 479. For good measure, the Court also described what it was not holding. Since the case involved state laws that made life without parole the mandatory sentence for the juvenile defendants, *id.* at 466–69, the Court did not need to decide whether the Eighth Amendment imposed a "categorical bar on life without parole for juveniles," *id.* at 479. It held only that the Eighth Amendment prohibits states from requiring an automatic life-without-parole sentence without giving sentencing courts discretion to consider a juvenile's youth when deciding whether to impose "that harshest prison sentence." *Id.* In other words, *Miller* did "not categorically bar a penalty for a class of offenders"; it "mandate[d] only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing" a life-without-parole sentence. *Id.* at 483.

A later case complicates things. Despite *Miller*'s disclaimers about its reach, the Court in *Montgomery* described the decision more broadly when concluding that "*Miller* announced a substantive rule that is retroactive in cases on collateral review." 136 S. Ct. at 732. According to *Montgomery*, *Miller* in fact "rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth." *Id.* at 734 (citation omitted). "*Miller* did bar life without parole," *Montgomery* added, "for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.* *Montgomery* thus found that "*Miller* drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption." *Id.* Only the latter may receive a life-without-parole sentence. *Id.* The Court will soon decide whether *Montgomery* expanded *Miller*'s holding (and whether any such expansion can be applied retroactively). *See Mathena v. Malvo*, 139 S. Ct. 1317 (2019) (granting certiorari).

For our purposes, though, *Miller*'s precise scope does not matter. Atkins cannot obtain relief under § 2254(d)(1) even if *Miller* more broadly prohibited life-without-parole sentences for juveniles who are not permanently incorrigible. *Montgomery*, 136 S. Ct. at 734. Either way, the state court's holding—that a chance for release after 51 years removes Atkins's sentence from *Miller*'s orbit—was neither "contrary to" nor an "unreasonable application" of *Miller*. 28 U.S.C. § 2254(d)(1).

Start with the "contrary to" language. A state court's decision is "contrary to" a Supreme Court holding only if "the state court applies a rule different from the governing law set forth in" the Supreme Court's decision, "or if it decides a case differently than [the] Court has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). The state court did nothing of the sort here. Whether read broadly or narrowly, *Miller* creates a legal rule about life-without-parole sentences. And, whether one looks at Atkins's sentence formally or functionally, he did *not* receive a life-without-parole sentence. He will be eligible for release after at least 51 years' imprisonment. *See Brown*, 563 S.W.3d at 197. *Miller*'s holding simply does not cover a lengthy term of imprisonment that falls short of life without parole. *See Starks v. Easterling*, 659 F. App'x 277, 280–81 (6th Cir. 2016); *cf. Bunch v. Smith*, 685 F.3d 546, 551 (6th Cir. 2012). Similarly, the facts of Atkins's case (the possibility of release after 51 years' imprisonment) materially distinguish it from the facts of *Miller* (no possibility of release). *Cf. Lockyer v. Andrade*, 538 U.S. 63, 74 & n.1 (2003).

Nor was the state court's decision an "unreasonable application" of *Miller*. A state decision cannot have unreasonably *applied* a Supreme Court precedent if a habeas petitioner needs a federal court "to *extend* that precedent" to obtain relief. *Woodall*, 572 U.S. at 426. Atkins needs that type of extension here. He asks us to expand *Miller*'s holding to cover life sentences that include a lengthy prison term before any potential release. "'Perhaps the logical next step from'" *Miller* would be to hold that a life sentence without any chance of parole for 51 years "does not satisfy the Eighth Amendment, but 'perhaps not.'" *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1729 (2017) (per curiam) (citation omitted). After all, *Miller* reasoned that life-without-parole sentences are unique, noting that they "share some characteristics with death sentences that are shared by no other sentences." *Miller*, 567 U.S. at 474 (quoting *Graham v. Florida*, 560 U.S. 48, 69 (2010)). The portion of *Miller* tailored to life-without-parole sentences shows that there is at least a "reasonable argument" that it applies only to those types of sentences. *Demirdjian v. Gipson*, 832 F.3d 1060, 1076 (9th Cir. 2016). That reasonable argument forecloses any claim that the state court acted unreasonably under § 2254(d)(1).

All told, *Miller* emphasized the "without parole" component of its holding five times. *See* 567 U.S. at 465, 470, 477, 479, 489. A "limitation thus emphasized is one the state courts may honor, with relatively little fear of being found 'objectively unreasonable' for doing so." *Mendoza v. Berghuis*, 544 F.3d 650, 655 (6th Cir. 2008).

Atkins resists this conclusion. According to him, *Miller* held that *all* juvenile sentences "must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Miller*, 567 U.S. at 479 (quoting *Graham*, 560 U.S. at 75). This reading would dramatically expand *Miller*'s scope and create significant uncertainty to boot. How many years may a sentence extend before juveniles must receive their first parole hearing? Atkins does not say. If *Miller* intended the broad reach that he proposes, we would have expected clear language to that effect along with guidance for lower courts on how to implement the Court's holding. But the language from *Miller* that Atkins highlights can be found only in a parenthetical immediately following a "Cf." citation to *Graham* (signaling a comparison). *Id.* Just as Congress does not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001), so too we do not think the Supreme Court alters its expressed holdings in parentheticals attached to case citations. Neither Congress nor the Supreme Court "hide[s] elephants in mouseholes." *Id.*

Atkins also relies on decisions extending *Miller* to hold that even life sentences with the possibility of parole can violate the Eighth Amendment. But none of Atkins's decisions—a mix of state-court and district-court cases—addressed this Eighth Amendment question under § 2254(d)(1)'s constraints. *See, e.g.*, *People v. Buffer*, 75 N.E.3d 470, 477–85 (Ill. App. Ct. 2017). And when interpreting § 2254(d)(1), the Supreme Court has told us that these types of cases may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam); *see Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017) (per curiam). They thus say nothing, for purposes of § 2254(d)(1), about what *Miller* clearly established.

\* \* \*

We have previously described the facts surrounding Atkins's murder of his stepfather. *Atkins v. Holloway*, 792 F.3d 654, 655–56 (6th Cir. 2015). Atkins alleged that his stepfather "regularly abused him and his mother." *Id.* at 655. And on the night of the murder, he returned home to "the sounds of his mother['s] crying . . . audible from outside." *Atkins*, 2003 WL 21339263, at *1. Reasonable people can debate a sentencing policy that did not give the 16-year-old Atkins any opportunity for release for 51 years. But that policy debate falls outside our mandate. The Constitution and § 2254(d)(1) make our role far different from that of the state legislature, the state sentencing court, or even the state appellate court that considered Atkins's constitutional claim. Finding that the state appellate court reasonably distinguished *Miller*, we grant Atkins's motion to proceed in forma pauperis but affirm the denial of relief.

———————

## CONCURRENCE

———————

COLE, Chief Judge, concurring.   On occasion, AEDPA's onerous standards require us to deny a habeas petitioner's application for relief even though the sentence he received is unconstitutional.   This outcome is most troubling in cases like Atkins's, where Supreme Court precedent—when properly applied—compels the conclusion that the state violated the petitioner's constitutional rights.   But although Congress has tied our hands when it comes to Atkins's sentence, it may not be too late for juveniles who appeal their sentences on direct review.   I thus write separately to explain why I conclude that the Supreme Court has banned the practice of sentencing a child to de facto life without parole.

To determine whether a sentence violates the Eighth Amendment's prohibition on "cruel and unusual punishments" courts must look to "the evolving standards of decency that mark the progress of a maturing society." *Graham v. Florida*, 560 U.S. 48, 58 (2010) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).   In the last decade and a half, the Supreme Court has recognized and reified an emerging standard of decency: when it comes to punishment, children are different, and sentencing courts must take those differences into account.   First, in *Roper*, the Court held that it was cruel and unusual to execute children under the age of 18.   *Roper v. Simmons*, 543 U.S. 551, 568 (2005).   Its conclusion was based on a host of factors, including the diminished mental capacity of minors, their vulnerability and inability to control their surroundings, and the plasticity of their identities relative to adults.   *Id*. at 569–70.   So, the Court concluded, "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Id.* at 570.

This theme—that children have diminished culpability and heightened capacity for reform—redounds throughout the subsequent series of cases focusing on sentences short of the death penalty.   In *Graham*, the Court held that the Eighth Amendment forbids the sentence of life without parole for juvenile non-homicide offenders, observing that "[w]hat the State must do . . .

is give [juvenile] defendants . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at 74–75. In *Miller*, the Court went further, holding that for all but the rarest of juvenile offenders, "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole" because, "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Miller v. Alabama*, 567 U.S. 460, 479 (2012). Finally, the *Montgomery* court, in holding that *Miller* had retroactive effect, crystallized the rule that life without parole constitutes excessive punishment for all non-incorrigible juveniles because "the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.'" *Montgomery v. Louisiana*, 136 S.Ct. 718, 734 (2016) (quoting *Miller*, 567 U.S. at 472).

That leaves the question of what to do with cases where a juvenile defendant is sentenced to life with the possibility of parole arising only after an extraordinarily lengthy term of years that may reach or exceed the defendant's life expectancy. These types of sentences—where a child can be expected to spend the remainder of her life behind bars—constitute de facto life without parole. And the logic of *Roper*, *Graham*, *Miller*, and *Montgomery* ineluctably extends not only to de jure life without parole sentences but also to de facto ones: both types of sentences deny a child offender a chance to return to society. To hold otherwise would lead to the absurd result of permitting sentencing courts to circumvent *Miller* by sentencing juveniles to a term of years that exceeds the juvenile's projected lifespan. Surely this is not what the Supreme Court intended when it said that it was a "foundational principle" that "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Miller*, 567 U.S. at 474.

It is true, as the majority notes, that *Miller* repeatedly uses the phrase "without parole" to describe the category of life sentences that it determined was unconstitutional. (Maj. Op. at 5). But the *Miller* Court did not hang its reasoning on whether a state court formally designated a sentence as one involving "life without parole." Instead, it targeted as unconstitutional punishments that "[i]mprison[ ] an offender until he dies" and "alter[ ] the remainder of his life 'by a forfeiture that is irrevocable.'" *Miller*, 567 U.S. at 474–75 (quoting *Graham*, 560 U.S. at

69). Thus, to reach the conclusion that the Supreme Court has already opined that sentencing courts may not impose a term-of-years sentence on a juvenile that exceeds the juvenile's life expectancy, one need not search for elephants in mouseholes. One need only recognize that the Court has spoken with clarity on a simple yet profound moral principle: it defies decency to sentence a child to die in prison without considering the fact that he is a child. I therefore must conclude that, under established precedent, it is unconstitutional for a court to sentence a child to a term of imprisonment with no meaningful opportunity for release and no meaningful consideration of his or her chances of rehabilitation.

An ever-increasing number of courts have also reached this conclusion. In *Starks v. Easterling*, Judge White, concurring, observed that state courts in California, Colorado, Connecticut, Florida, Iowa, Mississippi, Washington, and Wyoming have all rejected "as cruel and unusual lengthy sentences that approach or exceed a [juvenile] defendant's life expectancy, regardless whether that sentence bears the title 'life without parole.'" *Starks v. Easterling*, 659 F. App'x 277, 283 (6th Cir. 2016) (White, J., concurring). In the wake of *Starks*, other states have added to this chorus. *See, e.g.*, *State v. Zuber*, 152 A.3d 197, 212–13 (N.J. 2017) ("The term-of-years sentences in these appeals—a minimum of 55 years' imprisonment for Zuber and 68 years and 3 months for Comer—are not officially 'life without parole.' But we find that the lengthy term-of-years sentences imposed on the juveniles in these cases are sufficient to trigger the protections of *Miller* under the Federal and State Constitutions.") So, too, have federal circuit courts—some, on habeas review—concluded that the Constitution prohibits the imposition of de facto life without parole sentences on minors. *Budder v. Addison*, 851 F.3d 1047, 1059 (10th Cir. 2017) (reversing the denial of habeas relief where a juvenile was sentenced to serve at least 131.75 years in prison because the sentence did not "provide him a realistic opportunity for release"); *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016) (holding that "the logic of *Miller* applies" to a 100-year sentence because it was for "such a long term of years (especially given the unavailability of early release) as to be—unless there is a radical increase, at present unforeseeable, in longevity within the next 100 years—a *de facto* life sentence"); *Moore v. Biter*, 725 F.3d 1184, 1194 (9th Cir. 2013) (holding, on habeas review, that a state court's imposition of a lengthy term-of-years sentence that left a juvenile offender with "no hope

of reentering society" was irreconcilable with *Graham* and therefore unconstitutional under clearly established law).

But despite the ever-growing body of precedent, as the majority correctly notes, under AEDPA we may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Even if a petitioner demonstrates that a state court incorrectly interpreted Supreme Court case law, his petition still may not meet this exacting standard: "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Surely no fairminded jurist could conclude that a sentence mandating a hundred years in prison is anything other than life without parole, and drawing that distinction based on the wording of a defendant's sentence—life, life without parole, or a term of years—would be an unreasonable application of *Graham* and *Miller*."  *Starks*, 659 F. App'x at 284 (White, J., concurring).  But because it is possible that fairminded jurists could disagree as to whether Atkins's sentence of life with the possibility of parole in 51 years is a de facto sentence of life without parole inconsistent with *Graham*, *Miller*, and *Montgomery*, AEDPA requires us to affirm the denial of relief.