NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0594n.06

No. 21-5356

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| EDWARD PINCHON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RAYMOND BYRD, Warden, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Respondent-Appellee. | ) | |
| | ) | |

**FILED**
Dec 21, 2021
DEBORAH S. HUNT, Clerk

Before: BATCHELDER, ROGERS, and WHITE, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Edward Pinchon appeals the district court's denial of his petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. The district court granted a certificate of appealability on Pinchon's claim that his sentence is unconstitutional under the Supreme Court's holding in *Miller v. Alabama*, 567 U.S. 460 (2012). Finding that Pinchon cannot prevail, we AFFIRM.

## I.

In April 1997, then 17-year-old Pinchon shot and killed Leslie Handy. Prior to Handy's death, Pinchon and Handy shared an ongoing sexual relationship. At the time, Handy was a middle-aged man in his forties with a criminal history of child assault and rape. Handy, taking advantage of Pinchon's youth and other vulnerabilities, would have Pinchon stay at his house most nights during their relationship. Handy also provided food and clothing to Pinchon.

On April 21, 1997, Pinchon went to Handy's house with three friends to pick up clothes that Handy had purchased for him. Handy preferred to keep the clothes that he purchased for Pinchon at his house. Mary Jones, a key witness and Handy's neighbor, was visiting with Handy when Pinchon and his friends arrived. At some point, Pinchon grabbed Handy's shotgun from another room and told everyone to leave so that Handy and Pinchon could "make love." Handy told him to put the gun away. Eventually, Pinchon did and left Handy's house. A few minutes after he and his friends left, Pinchon called Handy's phone. Jones answered and Pinchon told Jones that he planned to kill Handy. About 15 minutes later, Pinchon and his friends returned to Handy's house. When Pinchon drew a handgun from his pants-pocket, Jones left. Seconds later, Jones heard several gun shots and saw Pinchon and his friends flee the house. Jones called the police and when they arrived, they found Handy dead from gunshot wounds.

The State of Tennessee charged Pinchon with first-degree murder. In September 1999, Pinchon was tried to a jury and convicted of first-degree murder. Under Tennessee law, there are three sentencing options for a defendant convicted of first-degree murder: (1) death; (2) life imprisonment without the possibility of parole; and (3) imprisonment for life. *See* Tenn. Code Ann. § 39-13-202(b). The trial court sentenced Pinchon to imprisonment for life because Pinchon's youth precluded a death sentence, *see* Tenn. Code Ann. § 37-1-134(a)(1), and the State of Tennessee did not seek a sentence for life in prison without the possibility of parole. For over a decade following his trial, Pinchon made several attempts to challenge his conviction and sentence. He filed a direct appeal, a petition for post-conviction relief in state court, and two petitions for federal habeas relief, all without success.

But two later Supreme Court cases gave Pinchon another chance. In 2012, the Court held unconstitutional "a sentencing scheme that mandates life in prison without possibility of parole for

juvenile offenders." *Miller v. Alabama*, 567 U.S. 460, 479 (2012). While a juvenile offender could still be sentenced to life without the possibility of parole, any sentencing scheme must allow the court to consider all relevant factors, including the juvenile offender's youth, before imposing such a sentence. *Id.* Then in 2016, the Court held that "state collateral review courts" must give retroactive effect to controlling "new substantive rule[s] of constitutional law," which included the new rule handed down in *Miller*. *Montgomery v. Louisiana*, 577 U.S. 190, 200 (2016).

Seeking relief under *Miller* and *Montgomery*, Pinchon filed a motion to reopen his post-conviction proceedings in Tennessee state court. Relying on *Miller*, he argued that the life sentence that he received as a minor qualified as cruel and unusual punishment in violation of the Eighth Amendment. But the state trial court denied his motion, finding no violation under *Miller* because Pinchon's life sentence was for a "specific number of years" and reduction credits served "the same purpose as eligibility for parole." The trial court also concluded that Tennessee's sentencing scheme did not violate *Miller* because "Tennessee law not only allows, but requires courts to give individualized consideration to a defendant in sentencing." *See* Tenn. Code. Ann. § 39-13-204(i)-(j). In short, the state trial court held that Tennessee law does not mandate a life sentence without the possibility of parole.

Pinchon applied to the Tennessee Court of Criminal Appeals ("TCCA") for permission to appeal, but the TCCA denied Pinchon's application because "[h]e did not receive a mandatory sentence of life without possibility of parole, as contemplated by *Miller*." The TCCA noted that Pinchon could earn enough credits to secure release after 51 years, which would not be possible if Pinchon had received a life sentence without the possibility of parole. The TCCA recognized that while *Miller*'s logic could extend to sentences similar to Pinchon's sentence, "that is not the

-3-

precedent which now exists," and it declined to expand *Miller* to Pinchon's application. Pinchon applied for permission to appeal further, but the Tennessee Supreme Court denied his application.

Finding no relief in state collateral-review proceedings, Pinchon turned to federal court. In November 2016, Pinchon filed a § 2254 petition, claiming that his sentence was unconstitutional under *Miller* and *Montgomery*. After the district court appointed counsel for Pinchon, he sought permission from this Court to file a successive petition in the district court under 28 U.S.C. § 2244(b)(3)(A), and we granted that permission. *See In re Pinchon*, No. 17-5104, WL 11037420, at *2 (6th Cir. Aug. 18, 2017).

In the district court, the magistrate judge recommended denial of Pinchon's petition. The district court agreed, adopted the magistrate judge's report and recommendation, and denied the petition. The district court held that the state court had adjudicated Pinchon's claim on the merits and that Pinchon had not met either of § 2254(d)'s requirements for habeas relief: namely, that the state court's adjudication has "resulted in a decision that was contrary to, or involved an unreasonable application of" United States Supreme Court precedent—here, *Miller* or *Montgomery*—or was based on "an unreasonable determination of the facts."

The district court granted Pinchon a certificate of appealability on two issues: whether *Miller* should extend to Pinchon's sentence and whether 28 U.S.C. § 2254(d) bars Pinchon's petition for a writ of habeas corpus. Pinchon timely appealed. He argues first that *Miller* prohibits his being sentenced to life because a life sentence imposed upon a juvenile offender denies the juvenile any meaningful opportunity to obtain release and thus violates the Eighth Amendment. Second, he contends that his life sentence is contrary to clearly established Supreme Court precedent because "such precedent required the Tennessee courts to fully enforce *Miller* by granting relief if Pinchon's sentence violates the Eighth Amendment in light of *Miller*'s

principles," and the state court failed to independently determine whether *Miller* could logically be extended to Pinchon's life sentence.

**II.**

We review de novo the district court's denial of Pinchon's habeas petition. *Post v. Bradshaw*, 621 F.3d 406, 413 (6th Cir. 2010). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standard of review for Pinchon's habeas claim. The federal habeas court may overturn a state court conviction if the last reasoned state court opinion on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "This statutory test is 'difficult to meet.'" *Atkins v. Crowell*, 945 F.3d 476, 477 (6th Cir. 2019) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). To obtain relief under the "contrary to" clause, the petitioner must show either that the state court reached a "conclusion opposite to that reached by [the Supreme] Court on a question of law," or that the state court reached "a result opposite" of a Supreme Court decision with "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). To obtain relief under the "unreasonable application" clause, the petitioner must show that the state court—while correctly identifying the applicable law from Supreme Court precedent—unreasonably applied the law to the petitioner's case. *Id.* at 413. Importantly, the question is not whether the state court decision incorrectly applied federal law. Rather, the petitioner must show that the state court decision was "objectively unreasonable," *Hall v. Mays*, 7 F.4th 433, 444 (6th Cir. 2021), such that no reasonable person could agree with the state court's decision. *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Our precedent precludes granting relief to Pinchon. In *Atkins*, we held, on nearly identical facts, that the petitioner was not entitled to relief under § 2254(d)(1). 945 F.3d at 478. There, a

Tennessee state court sentenced 16-year-old Howard Atkins to imprisonment for life. *Id.* at 477. Under this sentence, Atkins was eligible for release after 51 years. *Id.* Atkins sought post-conviction relief in state court, relying on the Supreme Court's holdings in *Miller* and *Montgomery*. *Id.* But the state courts declined to extend *Miller* to Atkins's sentence so he sought habeas relief in federal court. *Id.* The district court denied relief, and we affirmed, explaining:

> Whether read broadly or narrowly *Miller* creates a legal rule about life-without-parole sentences. And, whether one looks at Atkins's sentence formally or functionally, he did not receive a life-without-parole sentence. He will be eligible for release after at least 51 years' imprisonment. *Miller*'s holding simply does not cover a lengthy term of imprisonment that falls short of life without parole.

*Id.* A sentence that provides for the possibility of release, even after 51 years, we said, is materially distinguishable from a sentence without the possibility of release, which was Miller's sentence. Hence, the state court's decision was not contrary to Supreme Court precedent. Further, the state court's decision in *Atkins* was not an unreasonable application of the *Miller* holding. "A state [court] decision cannot have unreasonably *applied* a Supreme Court precedent if a habeas petitioner needs a federal court 'to *extend* that precedent' to obtain relief." *Id.* at 479.

As in *Atkins*, so too here. Pinchon received the same sentence Atkins did, and the same issue presented to us in *Atkins* presents itself here: whether the state court's decision not to extend *Miller* to a life-imprisonment sentence imposed on a minor is either contrary to or an unreasonable application of Supreme Court precedent. In *Atkins*, we held that it was not. Pinchon offers nothing to suggest that *Atkins* should not apply here. In fact, Pinchon concedes that *Atkins* forecloses relief on this ground. We agree.

While conceding that *Atkins* forecloses relief, Pinchon takes another tack, arguing here, as he argued to the district court, that the state court failed to exercise its independent judgment in applying *Miller* and that this failure violated federal law as clearly established in *Montgomery*. According to Pinchon, *Montgomery* requires that a state collateral-review court must review de

novo a claim of a *Miller* violation. That is, a state court cannot apply the deferential standard of review from § 2254(d) to its own review of the constitutional issues presented by the petitioner. Instead, the state court must independently determine the scope of *Miller* and decide whether the sentence falls within *Miller*'s scope, and failure to make this independent assessment violates clearly established federal law under *Montgomery*. This, in turn, Pinchon contends, requires us to review de novo the state court's refusal to extend *Miller* to Pinchon's sentence.

We are not persuaded. *Montgomery* did not clearly establish the federal law that Pinchon claims it does. To be "clearly established" federal law, Supreme Court precedent must announce a "controlling" legal principle. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). That controlling legal principle must be "embodied in a holding of th[e] [Supreme] Court." *Pouncy v. Palmer*, 846 F.3d 144, 161 (6th Cir. 2017) (quoting *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (per curiam)) (alterations in original). And courts should narrowly construe Supreme Court precedent so that "clearly established federal law" refers only to "something akin to on-point holdings." *Id.* (quotation marks omitted).

None of *Montgomery*'s holdings clearly establishes Pinchon's proffered standard of review for state collateral-review courts. Two on-point holdings from *Montgomery* apply here. First, state collateral-review courts must retroactively apply "a new substantive rule of constitutional law" that "controls the outcome of [the] case." *Montgomery*, 577 U.S. at 200. Second, *Miller* applies retroactively in state collateral-review courts. *Id.* at 212. Absent from *Montgomery*'s holdings is any clear statement of the standard of review that the state appellate court must apply in its review of a prisoner's retroactive *Miller* claim. Therefore, *Montgomery* did not clearly establish as federal law that state appellate courts must review constitutional claims de novo.

Even if *Montgomery*'s holdings clearly established an independent duty to determine *Miller'*s scope, neither the state trial court nor the TCCA failed that duty on collateral review. The state trial court denied relief to Pinchon because his "life sentence" differed from a "life sentence without the possibility of parole" in two important respects. First, in contrast to a life sentence that lasts as long as the defendant lives, Pinchon's sentence was for a "specific number of years" after which he would be eligible for release with no parole supervision. Second, under Tennessee precedent, Pinchon's sentence did not fall within the scope of *Miller* because "sentence reduction credits serve[d] the same purpose as eligibility for parole." *See Lowe-Kelley v. State*, No. M2015-00138, 2016 WL 742180, at *8-9 (Tenn. Crim. App., Feb. 24, 2016). Thus, the state trial court provided a thorough and independent analysis in determining whether *Miller* should apply to Pinchon's sentence.

The TCCA's decision is no different. On collateral review, the TCCA correctly reviewed the trial court's decision for abuse of discretion as required by state law. *See* Tenn. Code Ann. § 40-30-117(c). After a summary of the state trial court's decision, the TCCA concluded—albeit briefly—that there was no abuse of discretion because Pinchon's sentence included the possibility of release after 51 years and that this distinguished Pinchon's sentence from the type of sentence that *Miller* covered. As the district court put it, the TCCA's "statements sound like an interpretation of *Miller*'s scope."

On appeal, Pinchon insists that the TCCA failed its duty to exercise independent judgment. Pinchon relies on language from the TCCA's decision that it did not feel "compelled" to extend *Miller* to Pinchon's sentence. But this myopic argument ignores the TCCA's determination of *Miller*'s scope that preceded the language that Pinchon relies on. The TCCA speculated that *Miller* might extend to sentences like Pinchon's in the future, but that it was not persuaded to extend

*Miller* now. The TCCA nonetheless reviewed the state trial court's decision for an abuse of discretion as Tennessee law required. As already explained, the trial court provided a thorough and independent analysis that demonstrated why *Miller* did not extend to Pinchon's sentence. Whatever the merits of these decisions, it would be incorrect to say that the Tennessee state courts failed to adequately exercise their independent judgment in determining *Miller*'s scope on collateral review. Therefore, because § 2254(d)(1)'s deferential standard applies, and for the same reasons explained in *Atkins*, Pinchon is not entitled to relief.

## III.

For the reasons set forth above, we AFFIRM the judgment of district court.

**HELENE N. WHITE, Circuit Judge, concurring.** I join in the affirmance because I agree that the Tennessee appellate court's decision was not contrary to, and did not involve an unreasonable application of, clearly established law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). I write separately because I conclude that sentences like Pinchon's violate the Eighth Amendment's prohibition of cruel and unusual punishment. *See Starks v. Easterling*, 659 F. App'x 277, 282–83 (6th Cir. 2016) (White, J., concurring) (suggesting that an identical sentence would violate the Eighth Amendment).

In *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. The Court relied on *Graham v. Florida*, 560 U.S. 48 (2010), which explained that the prohibition of sentences of life without parole means that States "must provide 'some meaningful opportunity [for prisoners] to obtain release.'" *Miller*, 567 U.S. at 479 (quoting *Graham*, 560 U.S. at 75). Under *Miller*, prisoners like Pinchon "must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." *See Montgomery v. Louisiana*, 577 U.S. 190, 213 (2016).

Pinchon's sentence deprives him of a meaningful opportunity to obtain release and a hope for some years beyond prison walls. Pinchon was sentenced to "imprisonment for life," which in Tennessee is the equivalent of a sixty-year sentence. *See Brown v. Jordan*, 563 S.W.3d 196, 200 (Tenn. 2018) (citing Tenn. Code Ann. § 40-35-501(h)(1)). He can earn sentence-reduction credits of up to 15% of his sentence, which would make him eligible for release after fifty-one years. *See id.* at 202. If he were to earn the maximum sentence-reduction credits available, he would be eligible for release at age sixty-eight. *See id.* Data from the Centers for Disease Control and

Prevention (CDC) for 1998 show that Pinchon's life expectancy was about 69.3 years when he was sentenced. *See* Robert N. Anderson, United States Life Tables, 1998, 48 National Vital Statistics Reports, No. 18, p. 21 (Feb. 7, 2001), https://www.cdc.gov/nchs/data/nvsr/nvsr48/nvs48_18.pdf.[1] And that projection did not account for any potential effect of Pinchon's incarceration on his lifespan. Because Pinchon's minimum sentence approaches and may exceed his life expectancy, it should be considered a de facto sentence of life without parole in contravention of the Eighth Amendment. *See Atkins v. Crowell*, 945 F.3d 476, 481–82 (6th Cir. 2019) (Cole, J., concurring) (collecting the "ever-increasing number" of cases vacating term-of-years sentences under *Miller* and *Graham* because they amount to life without parole); *Starks*, 659 F. App'x at 283 (White, J., concurring) (same).

Nevertheless, I recognize that "fairminded jurists could disagree" that the Tennessee appellate court violated *Miller* in upholding Pinchon's sentence. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has not explicitly held that a long term-of-years sentence violates *Miller*, let alone indicated how long a sentence must be to constitute a de facto sentence of life without parole. To be sure, a term-of-years sentence beyond a certain length is the clear functional equivalent of a sentence of life without parole; such a sentence must violate *Miller*. *See Atkins*, 945 F.3d at 482 (Cole, J., concurring) (suggesting that a sentence mandating 100 years' imprisonment would violate *Miller*); *Budder v. Addison*, 851 F.3d 1047, 1059–60 (10th Cir. 2017) (holding on habeas review that a sentence of at least 131.75 years' imprisonment violated the Eighth Amendment under *Graham*); *McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016) (concluding that "the logic of *Miller* applies" to a sentence of 100 years' imprisonment without

[1] More recent CDC data show that, when Pinchon was thirty-eight years old in 2018, his life expectancy was about 74.9 years. *See* Elizabeth Arias and Jiaquan Xu, United States Life Tables, 2018, 69 National Vital Statistics Report, No. 12, p. 30 (Nov. 17, 2020), https://www.cdc.gov/nchs/data/nvsr/nvsr69/nvsr69-12-508.pdf.

the possibility of early release); *Moore v. Biter*, 725 F.3d 1184, 1194 (9th Cir. 2013) (holding on habeas review that a 254-year sentence violated *Graham* where the petitioner would not be eligible for parole for 127 years). But because fairminded jurists could reasonably debate whether sentencing a juvenile to a minimum of fifty-one years' imprisonment violates *Miller*, AEDPA requires us to affirm the district court's denial of Pinchon's petition.