# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v BOYKIN
PEOPLE v TATE

Docket Nos. 157738 and 158695. Argued on application for leave to appeal January 12, 2022. Decided July 28, 2022.

In Docket No. 157738, Demariol D. Boykin was convicted by a jury of first-degree murder, MCL 750.316(1)(c), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was initially sentenced to a mandatory term of life without the possibility of parole for first-degree murder, to be served consecutively to a two-year term for felony-firearm. His convictions and sentences were affirmed in an unpublished per curiam opinion of the Court of Appeals, issued July 14, 2005 (Docket No. 253224) (*Boykin I*). Subsequently, the United States Supreme Court decided *Miller v Alabama*, 567 US 460 (2012), which held that sentencing an individual to mandatory life without the possibility of parole for a crime they committed before the age of 18 (a juvenile offender) violated the Eighth Amendment's ban on cruel and unusual punishments and that trial courts are required to consider the attributes of youth when sentencing a juvenile offender to life without parole. In *Montgomery v Louisiana*, 577 US 190 (2016), the Supreme Court held that *Miller* was a substantive constitutional rule that was retroactive on state collateral review. The Michigan Legislature accounted for these changes by enacting MCL 769.25 and MCL 769.25a, which eliminated sentences of mandatory life imprisonment without the possibility of parole for all individuals who were convicted of specific crimes, including first-degree murder, for acts committed while they were juveniles. As a juvenile offender who was sentenced to a mandatory term of life imprisonment without the possibility of parole, Boykin was entitled to resentencing under MCL 769.25a. At resentencing, the prosecution did not move to seek a sentence of life without parole but instead sought a sentence of 40 to 60 years' imprisonment, which the trial court imposed. Boykin appealed this sentence by right. The Court of Appeals, MARKEY, P.J., and GADOLA, JJ. (SHAPIRO, J., dissenting), affirmed in an unpublished per curiam opinion issued March 20, 2018 (Docket No. 335862), holding that because the prosecutor had not sought a sentence of life without parole, the trial court was not required to consider defendant's youth when imposing sentence. Boykin sought leave to appeal in the Supreme Court, which directed and heard oral argument on the application for leave to appeal. 507 Mich 960 (2021).

In Docket No. 158695, Tyler M. Tate was convicted by a jury of first-degree premeditated murder, MCL 750.316(1)(a); making a false report of a felony to police, MCL 750.411a(1)(b); and

lying to a police officer in a criminal investigation, MCL 750.479c(2)(d)(i). He was sentenced on April 24, 2017, under MCL 769.25, which had become law in 2014. As with Boykin, the prosecution did not move to seek a sentence of life without the possibility of parole but instead sought the imposition of a 40- to 60-year sentence, which the trial court imposed. Tate appealed his sentence by right, and the Court of Appeals, M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ., affirmed in an unpublished per curiam opinion issued September 20, 2018 (Docket No. 338360). Tate sought leave to appeal in the Supreme Court, which directed oral argument on the application for leave to appeal. 507 Mich 961 (2021).

In an opinion by Justice BERNSTEIN, joined by Chief Justice McCORMACK and Justices CLEMENT (except as to Part IV(B)), CAVANAGH, and WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

Sentencing courts must consider a juvenile offender's youth as a mitigating factor at sentencing hearings conducted under MCL 769.25 or MCL 769.25a when the juvenile offender is sentenced to a term of years. However, this consideration need not be articulated on the record. Therefore, the Court of Appeals was correct when it held that there is no constitutional mandate to make specific findings on the record as to the *Miller* factors when a juvenile offender is sentenced to a term of years but that sentencing courts should be guided by the factors set forth in *People v Snow*, 386 Mich 586 (1972). Consideration of the *Snow* factors necessarily includes the consideration of youth as a mitigating factor. Because it is unclear whether the trial courts properly considered youth to be mitigating in either of these consolidated cases, yet the Court of Appeals affirmed the trial courts' sentencing decisions, the portions of both Court of Appeals opinions discussing defendants' sentencing challenges were vacated and the cases were remanded to the Court of Appeals for further consideration.

1. Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range. Within that range, the sentence should be tailored to the particular circumstances of the case and offender. It is the trial court's duty to exercise discretion in a way that ensures the individualized sentence conforms with the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 651 (1990). Under *Snow*, an appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense. Within each of the two statutes at issue in these cases, MCL 769.25 and MCL 769.25a, there is a range of sentencing outcomes. Unless the prosecution moves to sentence a defendant to life in prison without the possibility of parole, juvenile defendants who are convicted of certain enumerated acts may receive a minimum sentence of 25 to 40 years and a maximum sentence of 60 years.

2. The Eighth Amendment's ban on cruel and unusual punishments requires courts to think differently about how juvenile offenders are sentenced. Since *Roper v Simmons*, 543 US 551 (2005), which held that the death penalty is an unconstitutional punishment for a juvenile offender , the Supreme Court has been clear that juvenile status matters at sentencing and that special consideration must be paid to youthful offenders before the harshest sentences may be imposed. The *Roper* Court explained that juvenile offenders have diminished culpability because they lack maturity and a developed sense of responsibility, are more vulnerable to negative influences and

outside pressures, and do not yet have a well-formed character. Applying this same logic, the Supreme Court held in *Graham v Florida*, 560 US 48 (2010), that sentences of life without the possibility of parole are unconstitutional for juvenile offenders who did not commit homicide, noting that juvenile offenders are at a significant disadvantage in criminal proceedings because of the characteristics discussed in *Roper*. In *Miller*, the Supreme Court applied the logic and rationale from *Roper* and *Graham* that children are different from adults for purposes of sentencing in the context of mandatory life-without-parole sentences for homicide offenses, explaining that the characteristics of youth and the way they weaken rationales for punishments may render a sentence of life without the possibility of parole disproportionate even for a homicide offense. Therefore, when sentencing juvenile offenders to sentences of life imprisonment without the possibility of parole, trial courts are required to take into account how children are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

3. Consideration of youth and its attendant circumstances is required by Michigan's sentencing jurisprudence. Michigan's sentencing caselaw focuses on *Milbourn*'s principle of proportionality, which requires sentences imposed to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. Because the United States Supreme Court has held that youth—a circumstance of the offender—matters at sentencing, Michigan caselaw requires that this relevant offender characteristic must be considered at sentencing. In *Snow*, the Michigan Supreme Court expressed the importance of four basic sentencing considerations: reformation of the offender, the protection of society, disciplining of the wrongdoer, and deterring others from committing similar offenses. Without considering the mitigating factors of youth, a sentence cannot adequately address any of these factors. Therefore, in all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor. However, there is no constitutional, statutory, or common-law requirement that this consideration be stated on the record. Therefore, trial courts need not articulate their bases for considering an offender's youth during sentencing hearings conducted under MCL 769.25 and MCL 769.25a in which the offender is sentenced to a term of years.

4. In *Boykin II*, the Court of Appeals held that consideration of Boykin's youth was unnecessary because *Miller* only pertained to defendants who are sentenced to serve life without the possibility of parole, and the majority never addressed whether the trial court properly considered youth to be a mitigating factor when Boykin was sentenced. Accordingly, that opinion was vacated and the case was remanded to the Court of Appeals to consider that question. In *Tate*, rather than rejecting Tate's arguments, the Court of Appeals applied *People v Wines*, 323 Mich App 343 (2018), rev'd in nonrelevant part 506 Mich 954 (2020), which held that trial courts must consider the distinctive attributes of youth when sentencing a minor to a term of years pursuant to MCL 769.25a. The panel identified ways in which it believed the trial court gave consideration to Tate's attributes of youth; however, the examples appeared to only represent a small portion of the record established by the sentencing court, and it was not clear that defendant's youth was considered a mitigating factor rather than an aggravating factor. Although trial courts are not required to make a record that they considered each mitigating factor listed in *Miller*, whether the totality of the record established by the trial court complied with the requirement that a trial court consider youth to be a mitigating factor was a close question deserving of additional appellate review. Accordingly, Part V of the Court of Appeals opinion, which discussed Tate's sentence, was vacated and the case was remanded to the Court of Appeals for reconsideration.

Court of Appeals judgments vacated in part; cases remanded to the Court of Appeals for further consideration.

Chief Justice McCORMACK, concurring, fully agreed with the majority opinion but wrote separately to comment on the majority's conclusion that the Michigan Constitution does not require a trial court to articulate on the record how it considered the mitigating characteristics of youth when it sentences a juvenile defendant to a sentence other than life without the possibility of parole. She noted that the Michigan Constitution was not mentioned in these cases until Tate argued in a supplemental brief that his 40-year minimum sentence was disproportionate under Const 1963, art 1, § 16 and that this provision requires an on-the-record explanation of how the mitigating characteristics of youth affected the trial court's sentencing decision. While neither the statutory scheme nor the federal Constitution categorically requires an on-the-record articulation of how the characteristics of youth affect a sentencing court's decision, the majority correctly held that sentencing courts must consider those characteristics and treat them as mitigating. A trial court's failure to do so explicitly on the record, notwithstanding the absence of a categorical rule requiring an on-the-record articulation, stands a high chance of rendering its sentence a violation of Const 1963, art 1, § 16, and therefore an abuse of its discretion. The principles animating *Miller*, *Graham*, and *Roper*, together with Michigan precedent requiring individualized sentencing, may render a sentence where the effect of youth is unexplained at such high risk of violating those principles as to be constitutionally impermissible.

Justice CLEMENT, concurring in part and dissenting in part, agreed with the majority that trial courts are required to consider the mitigating effects of youth when sentencing a juvenile to a term-of-years sentence because youth affects the traditional penological goals that guide a sentencer's discretion. However, she dissented as to the majority's application of that rule to Tate because the trial court's record of its decision-making sufficiently justified the sentence imposed in order to facilitate appellate review, which is the sole articulation requirement mandated by Michigan's sentencing jurisprudence. The majority's decision to remand this case to the Court of Appeals for reconsideration muddied, if not contradicted, the majority's holding that no statutory or constitutional authority compels the trial court to make an on-the-record explanation of its consideration of youth. To the extent that the majority believed that Tate was deserving of a shorter minimum sentence because of the mitigating effects of youth, that was a proportionality issue that should have been addressed at this stage and not remanded to the Court of Appeals, which already considered and rejected Tate's proportionality argument.

Justice ZAHRA, joined by Justice VIVIANO, dissenting, stated that *Miller*'s holding does not cover a lengthy term of imprisonment that falls short of life without parole, and given the absence of a constitutional, statutory, or precedential basis to do so, he would not have extended *Miller*'s reasoning to term-of-years sentences under MCL 769.25 and MCL 769.25a. He noted that the holding in *Miller* was limited to correcting the constitutional infirmity of sentencing schemes mandating life without parole for juvenile homicide offenders by requiring that sentencers be given the opportunity to consider the mitigating qualities of youth and the discretion to impose a lesser sentence, but that neither *Miller* nor its progeny required sentencers to consider the distinctive attributes of a juvenile homicide offender's youth when imposing a sentence less than life without parole. Further, MCL 769.25 and MCL 769.25a do not require sentencing courts to consider

mitigating qualities of youth when sentencing a juvenile homicide offender to a term of years, and the Legislature's omission of this requirement was presumed to be an intentional policy choice that the judiciary may not second-guess or override. By enacting MCL 769.25 and MCL 769.25a, the Legislature put in place a scheme that necessarily accounts for a juvenile homicide offender's youth, even when the sentence imposed is a term of years. Moreover, while courts fashioning a proportionate sentence must take into account an offender's background, there was no basis in *Milbourn* to require that a trial judge tailor every defendant's sentence in relationship to the defendant's age. Given that sentencing courts are not required to articulate an on-the-record explanation of how youth or the *Miller* factors affect a term-of-years sentence imposed under MCL 769.25 or MCL 769.25a, there was no legal basis for affirming the Court of Appeals decision in *Wines*. Justice ZAHRA would have held that traditional sentencing considerations should apply when the sentence to be imposed on a juvenile homicide offender is less than life without parole, and he would have affirmed defendants' 40- to 60-year sentences.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 28, 2022

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                               No. 157738

DEMARIOL DONTAYE BOYKIN,

     Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                               No. 158695

TYLER MAURICE TATE,

     Defendant-Appellant.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

These consolidated cases concern the sentencing of two individuals who were convicted of first-degree murder for crimes they committed before they turned 18, and who both received term-of-years sentences under MCL 769.25 or MCL 769.25a. In particular, we must decide whether trial courts have an obligation to expressly set forth how a defendant's age at the time a crime was committed might affect the judge's sentencing decision and whether trial courts must consider the distinctive attributes of youth, such as those discussed in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), when sentencing a juvenile defendant to a term-of-years sentence. We hold that trial courts must consider a juvenile defendant's youth to be a mitigating factor when sentencing them to term-of-years sentences under MCL 769.25 or MCL 769.25a; however, we find no basis for requiring trial courts to articulate on the record how a defendant's youth affected the decision. Accordingly, we vacate the judgments of the Court of Appeals to the extent they addressed sentencing issues and remand both cases to the Court of Appeals to determine whether the sentencing courts properly considered defendants' youth as a mitigating factor.

I. FACTS AND PROCEDURAL HISTORY

A. *PEOPLE v BOYKIN*

In 2003, when he was 17, defendant Demariol Dontaye Boykin was involved in a fatal shooting. The victim was engaged in a fistfight with one of Boykin's brothers, while Boykin, Boykin's father, and another one of his brothers watched. At one point, believing that the victim had removed an object from a pocket and struck his brother with it, Boykin pulled out a gun. The victim turned and ran but Boykin chased him, firing his gun a few times. The victim was hit by two bullets and fell down. Boykin ran up to the victim and continued to kick and punch him while he was on the ground; his two brothers also joined

2

in the beating. Boykin then tried to shoot the victim again at close range, but the gun misfired, so Boykin hit the victim in the face with the gun before fleeing the scene with his brothers in his father's car. The victim later died in the emergency room.

Boykin was charged with and convicted by a jury of first-degree murder, MCL 750.316(1)(c), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] He was initially sentenced to a mandatory term of life without the possibility of parole for first-degree murder, to be served consecutively to a two-year term for felony-firearm. Boykin's convictions and sentences were affirmed on appeal. *People v Boykin*, unpublished per curiam opinion of the Court of Appeals, issued July 14, 2005 (Docket No. 253224) (*Boykin I*). Before this action, Boykin also filed a number of unsuccessful postconviction measures to overturn his conviction and sentences.

After Boykin was sentenced in 2003, there were several notable changes in the law that substantively affected sentencing for juvenile defendants. In 2012, the United States Supreme Court decided *Miller*, which held that sentencing individuals to mandatory life without the possibility of parole for crimes they committed before the age of 18 violated the Eighth Amendment's ban on cruel and unusual punishments. *Miller*, 567 US at 489. Four years later, the Supreme Court announced that *Miller* was a substantive constitutional rule that was retroactive on state collateral review. *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016). The Michigan Legislature accounted for these changes by enacting a sentencing scheme that eliminated mandatory life without the

---

[1] Boykin and both brothers were charged and convicted with respect to their roles in this altercation. Neither of Boykin's brothers is a party to this appeal.

3

possibility of parole for all individuals who were convicted of specific crimes, including first-degree murder, for acts committed while they were juveniles. MCL 769.25; MCL 769.25a.[2]

As a juvenile offender who was sentenced to a mandatory term of life imprisonment without the possibility of parole, Boykin was entitled to resentencing under MCL 769.25a. His resentencing took place on October 28, 2016. The prosecution did not move the court to seek a sentence of life without the possibility of parole. Instead, the prosecution sought the imposition of a 40- to 60-year sentence, whereas Boykin argued for a 25- to 60-year sentence. After hearing from Boykin and the victim's brother, the trial court agreed with the prosecution and sentenced Boykin to serve 40 to 60 years in prison. Boykin appealed his sentence by right. The Court of Appeals affirmed in a split, unpublished decision. *People v Boykin*, unpublished per curiam opinion of the Court of Appeals, issued March 20, 2018 (Docket No. 335862) (*Boykin II*).

Boykin sought leave to appeal in this Court. We directed the Clerk to schedule oral argument at the same session as *People v Tate* and directed the parties to address:

---

[2] This sentencing scheme did not eradicate sentences of life without the possibility of parole for this class of defendant. Rather, it enabled the prosecution to move the trial court to seek a life-without-parole sentence for a particular defendant sentenced under MCL 769.25 or MCL 769.25a. MCL 769.25(3); MCL 769.25a(4). If, as here, the prosecution did not seek a life-without-parole sentence, a defendant must be sentenced to a term of years with a minimum sentencing range of 25 to 40 years and a maximum sentence of 60 years. MCL 769.25(9); MCL 769.25a(4)(c). The chief difference between MCL 769.25 and MCL 769.25a is that MCL 769.25 eliminated mandatory sentences of life without the possibility of parole for juveniles who were sentenced after *Miller* and MCL 769.25a enacted a resentencing scheme for these juvenile offenders already sentenced in the event *Miller* was given retroactive application. Therefore, since *Montgomery* held that *Miller* was to be given retroactive application, MCL 769.25a is the applicable statute for defendant Boykin's resentencing.

4

(1) whether the Court of Appeals correctly held in *People v Wines*, 323 Mich App 343 (2018), rev'd in nonrelevant part 506 Mich 954 (2020), that trial courts must consider the distinctive attributes of youth, such as those discussed in *Miller* . . . , when sentencing a minor to a term of years pursuant to MCL 769.25a; (2) if *Wines* was correctly decided, whether sentencing judges have an obligation to explicitly set forth their analysis of how the defendant's age impacted their sentencing discretion when proceeding under MCL 769.25a or MCL 769.25; and (3) if *Wines* applies to this case, whether the trial court complied with its requirements, and if it did not, what more the court was required to do. [*People v Boykin*, 507 Mich 960, 960-961 (2021)].

## B. *PEOPLE v TATE*

Defendant Tyler Maurice Tate was involved in a gang-related shooting when he was 16 years old. Tate, Tyshon Taylor, Brendon Stanton-Lipscomb, and Demetrius Armour were all affiliated with a gang known as the Eastside Ghetto Boys or Rob Gang.[3] Tate and Taylor were at the Eastland Mall in Harper Woods on December 26, 2015, when they overheard the victim make a disparaging remark about the Rob Gang. After Stanton-Lipscomb was called and informed of what had happened, Stanton-Lipscomb asked for the victim to be escorted outside, where Stanton-Lipscomb planned to shoot him. Tate then led the victim and another person to the outside of the mall, where Stanton-Lipscomb was hiding. Stanton-Lipscomb shot the victim several times, causing fatal wounds. The other individual escaped without injury.

Tate was convicted by a jury of first-degree premeditated murder, MCL 750.316(1)(a), making a false report of a felony to police, MCL 750.411a(1)(b), and lying to a police officer in a criminal investigation, MCL 750.479c(2)(d)(*i*). He was sentenced on April 24, 2017, under MCL 769.25, which had become law in 2014. As with Boykin,

---

[3] Each of these three individuals was also charged and prosecuted separately for his involvement in the incidents leading to Tate's convictions. They are not parties to this appeal.

5

the prosecution did not move to seek a sentence of life without the possibility of parole, and instead sought the imposition of a 40- to 60-year sentence, whereas Tate argued for a 25- to 60-year sentence. After hearing from Tate and the victim's mother, the trial court agreed with the prosecution and sentenced Tate to serve 40 to 60 years in prison for his murder conviction, concurrent to one to four years each for his remaining convictions.

Tate appealed his sentence by right. The Court of Appeals affirmed. *People v Tate*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 338360).

Tate sought leave to appeal in this Court. We directed the Clerk of this Court to schedule oral argument, directing the parties to address the same issues as in *Boykin*. *People v Tate*, 507 Mich 961 (2021).

## II. STANDARD OF REVIEW

Sentencing decisions are reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

This case also concerns matters of constitutional and statutory interpretation, which are reviewed de novo. *People v McKinley*, 496 Mich 410, 414-415; 852 NW2d 770 (2014).

6

## III.  ANALYSIS

### A.  SENTENCING AUTHORITY

The Michigan Constitution vests sentencing authority in the Legislature.  Const 1963, art 4, § 45; see also *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001) (citations omitted).  "The authority to impose sentences and to administer the sentencing statutes enacted by the Legislature lies with the judiciary."  *Hegwood*, 465 Mich at 436-437.

Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range.  Within that range, the sentence should be tailored to the particular circumstances of the case and offender.  *People v McFarlin*, 389 Mich 557, 574; 208 NW2d 504 (1973).  It is the trial court's duty to exercise discretion in a way that ensures the individualized sentence conforms with the principle of proportionality.  *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990).  An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense.  *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), citing *Williams v New York*, 337 US 241; 69 S Ct 1079; 93 L Ed 1337 (1949).  However, these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence.  *People v Broden*, 428 Mich 343, 350; 408 NW2d 789 (1987).

Within each of the two statutes at issue here, MCL 769.25 and MCL 769.25a, there is a range of sentencing outcomes.  Unless the prosecution moves to sentence a defendant to life in prison without the possibility of parole, juvenile defendants who are convicted of

certain enumerated acts may receive a minimum sentence of 25 to 40 years and a maximum sentence of 60 years.[4] MCL 769.25(4), (9); MCL 769.25a(4)(c).

## B. YOUTH IS A MITIGATING FACTOR THAT TRIAL COURTS MUST CONSIDER WHEN SENTENCING JUVENILE OFFENDERS UNDER MCL 769.25 AND MCL 769.25a

Sentencing juvenile defendants who were convicted of first-degree murder is an exceptionally daunting task for trial courts. On one hand, first-degree murder is an extremely serious offense, as it recognizes that at least one person is deceased. On the other hand, defendants who are sentenced under MCL 769.25 and MCL 769.25a were juveniles when they committed their crimes. Even as we keep in mind the solemnity of the acts that bring us to our consideration of the legal issues at hand, the Supreme Court has clearly signaled that the Eighth Amendment's ban on cruel and unusual punishments requires us to think differently about how we sentence juvenile offenders.

Since 2005, the Supreme Court's message has been clear: one's juvenile status matters, and special consideration must be paid to youthful offenders before the harshest sentences may be imposed. In the first of many cases dealing with juvenile offenders and sentencing, the Supreme Court held that the death penalty is an unconstitutional punishment for offenders who were under the age of 18 when their offenses were

---

[4] In *Boykin II*, the majority asserted that the trial court "sentenced defendant to a term of years, choosing not to impose a sentence of life without parole." *Boykin II*, unpub op at 3. This assertion is clearly erroneous. The trial court possesses no authority to sentence a juvenile defendant to life without parole unless the prosecution first moves for that sentence and the proper hearing is conducted. See MCL 769.25(4) and (9); MCL 769.25a(4)(c). Because the prosecution never moved to sentence Boykin to a sentence of life without the possibility of parole, the trial court could only impose a sentence within the applicable range of terms of years.

committed. *Roper v Simmons*, 543 US 551; 125 S Ct 1183; 161 L Ed 2d 1 (2005). In *Roper*, the Supreme Court relied on three general differences between juvenile and adult offenders that "demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders." *Id*. at 569. Those differences are: (1) juveniles have a " 'lack of maturity and an underdeveloped sense of responsibility,' " which "often result[s] in impetuous and ill-considered actions and decisions"; (2) juveniles are "more vulnerable or susceptible to negative influences and outside pressures, including peer pressure," and (3) "the character of a juvenile is not as well formed as that of an adult." *Id*. at 569-570 (citation omitted). These reasons mean that juvenile offenders have "a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment" and make it "less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Id*. at 570. "Once the diminished culpability of juveniles is recognized, it is evident that the penological justifications for the death penalty apply to them with lesser force than to adults." *Id*. at 571.

Five years later, applying this same logic, the Supreme Court held that sentences of life without the possibility of parole are unconstitutional for juvenile offenders who did not commit homicide. *Graham v Florida*, 560 US 48, 76; 130 S Ct 2011; 176 L Ed 2d 825 (2010) (holding that "[a]n offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed"). In the process, *Graham* added another reason why youth matters—that "the features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings." *Id*. at 78.

9

In *Miller*, the Supreme Court applied the logic and rationale from *Roper* and *Graham* that "children are constitutionally different from adults for purposes of sentencing" in the context of mandatory life-without-parole sentences for homicide offenses. *Miller*, 567 US at 471. Although *Graham*'s holding only concerned non-homicide offenses, the Supreme Court held that its underlying rationale was broader—the characteristics of youth and the way they weaken rationales for punishments may render a sentence of life without the possibility of parole disproportionate even for a homicide offense. *Id*. at 473. The Supreme Court noted that the problem with mandatory life-without-parole sentences is that they make youth and the factors of youth, as articulated by *Roper* and *Graham*, irrelevant and "pose[] too great a risk of disproportionate punishment." *Id*. at 479. Therefore, when sentencing juvenile offenders to sentences of life imprisonment without the possibility of parole, trial courts are required to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.[5] Not having the ability to take these differences into account "disregards the possibility of rehabilitation even when the circumstances most suggest it." *Id*. at 478.

Following *Roper*, *Graham*, and *Miller*, the Supreme Court has continued to articulate that "children are constitutionally different from adults in their level of culpability," when holding that *Miller* created a substantive rule of constitutional law that was to be given retroactive effect. *Montgomery*, 577 US at 213. Most recently, the Supreme Court again made clear that youth is a mitigating factor in sentencing juveniles.

---

[5] Because *Miller* incorporated the factors articulated in *Roper* and *Graham*, these factors together are colloquially known as the *Miller* factors.

10

*Jones v Mississippi*, 593 US ___; 141 S Ct 1307, 1319; 209 L Ed 2d 390 (2021) (explaining that, "[f]aced with a convicted murderer who was under 18 at the time of the offense and with defense arguments focused on the defendant's youth, it would be all but impossible for a sentencer to avoid considering that *mitigating factor*") (emphasis added).

In these cases, the Supreme Court has identified and analyzed the unique attributes of youth and emphasized the importance of considering these attributes during sentencing.[6] Thus far, however, the Supreme Court has recognized a constitutional requirement to consider these attributes only in the context of sentencing juveniles to life without the possibility of parole. Now we must decide whether consideration of these attributes is required when imposing a term-of-years sentence on a juvenile defendant. Keeping in mind the Supreme Court's consistent statement across Eighth Amendment cases that "youth matters in sentencing," *Jones*, 593 US at ___; 141 S Ct at 1314, we hold that consideration of youth and its attendant circumstances is also required by this state's sentencing jurisprudence.

---

[6] There is little practical difference between this majority opinion and the outcome preferred by the dissent. In order to come to a disagreement, the dissent narrowly reads *Roper*, *Miller*, *Montgomery*, and *Jones* at the same time that it broadly reads this opinion. The Supreme Court has been clear that youth matters in sentencing decisions. Most recently, the Supreme Court stated verbatim that, "if the sentencer has discretion to consider the defendant's youth, the sentencer necessarily will consider the defendant's youth." *Jones*, 593 US at ___; 141 S Ct at 1319. This opinion simply echoes that sentiment. Whereas the dissent is correct that *Miller* and *Montgomery* were decided in the context of mandatory sentences of life without the possibility of parole, *Jones* was decided squarely within the discretionary sentencing regime that was mandated by *Miller* and *Montgomery*. Thus, we respectfully disagree that the Supreme Court's holdings should be limited to the context of mandatory sentences of life without the possibility of parole.

Our sentencing caselaw focuses on the principle of proportionality, which requires sentences imposed "to be proportionate to the seriousness of the circumstances surrounding the offense *and the offender.*" *Milbourn*, 435 Mich at 636 (emphasis added). Accordingly, because the Supreme Court has held that youth—a circumstance of the offender—matters at sentencing, our own caselaw requires that such a relevant offender characteristic must be considered at sentencing. In *Snow*, this Court decided the legality of a sentence that was made harsher because the defendant decided to face trial rather than plead guilty. In holding that the defendant was entitled to resentencing because the record was silent about why the defendant's sentence departed from the ordinary minimum sentence, this Court expressed the importance of four basic sentencing considerations. *Snow*, 386 Mich at 592, 594. Those four considerations are: (1) "reformation of the offender"; (2) "protection of society"; (3) "disciplining of the wrongdoer"; and (4) "deterrence of others from committing like offenses." *Id*. at 592.

Youth affects these considerations. For example, since "a greater possibility exists that a minor's character deficiencies will be reformed," the mitigating qualities of youth necessarily transform the analysis of the first *Snow* criterion. *Roper*, 543 US at 570. Without considering the mitigating factors of youth, then, a sentence cannot adequately address the reformation of the offender. Next, because youth have a "heightened capacity for change" relative to adults, the needs for protecting society should be given individualized consideration, which necessarily considers the way youth affects the defendant's ability to change. *Miller*, 567 US at 479; see also *Jones*, 593 US at ___ n 7; 141 S Ct at 1337 n 7 (Sotomayor, J., dissenting) (explaining that "[t]he Eighth Amendment requires that sentencers (and reviewing courts) not presume that most juveniles will forever

remain the 'murderers' they once were") (citation and comma omitted). In addition, because it is "less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character," *Snow*'s focus on discipline of the wrongdoer must be viewed differently under the lens of youth. See *Roper*, 543 US at 570. "Nor can deterrence do the work in this context, because ' "the same characteristics that render juveniles less culpable than adults" ' . . . make them less likely to consider potential punishment." *Miller*, 567 US at 472, quoting *Graham*, 560 US at 72, quoting *Roper*, 543 US at 71. Given that youth is a mitigating factor, it will inevitably factor into *Snow*'s four considerations.

We thus hold, consistent with the Supreme Court's repeated recognition of youth's effect on sentencing and our own sentencing jurisprudence, that in all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor.

## C. TRIAL COURTS NEED NOT ARTICULATE THEIR BASES FOR CONSIDERING THE OFFENDERS' YOUTH WHEN SENTENCING YOUTHFUL OFFENDERS TO TERMS OF YEARS

The requirement to consider youth at sentencing is not necessarily the same as a requirement to articulate the *Miller* factors on the record during a sentencing hearing. There are a few possible sources of law that would require courts to articulate these factors on the record, such as a statute, the United States Constitution, the Michigan Constitution, or our caselaw. None of those sources of law expresses such a requirement.[7] Therefore,

---

[7] Because we are not persuaded by the briefs that the Michigan Constitution considers this specific issue in a meaningfully different way than these other sources of law, we decline

13

we hold that trial courts need not articulate their bases for considering an offender's youth during sentencing hearings conducted under MCL 769.25 and MCL 769.25a in which the offender is sentenced to a term of years.

MCL 769.25 is the relevant statute outlining sentencing procedure for juvenile defendants convicted of these enumerated offenses, including first-degree murder.[8] In enacting this statute, the Legislature differentiated between two plausible outcomes for offenders who were convicted of certain enumerated acts committed before they turned 18. A defendant could either receive a term of years with a minimum sentence of 25 to 40 years and a maximum of 60 years or, if the prosecution timely moved to have the court consider it, life without the possibility of parole. Compare MCL 769.25(3) to MCL 769.25(4). If the prosecution seeks life without the possibility of parole, the trial court must conduct a hearing in which it considers the *Miller* factors. MCL 769.25(6). At that hearing, the trial court "shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed." MCL 769.25(7). But if the prosecution does not move for life without the possibility of parole or if the trial court decides such a sentence is disproportionate, there is no analogous statutory provision requiring that the trial court specify on the record any specific factors or other sentencing criteria. MCL 769.25(9). This is a meaningful distinction. Thus, we find that there is no

___

to hold that there is an independent basis for an on-the-record articulation requirement under the Michigan Constitution.

[8] MCL 769.25a is also relevant for many members of this class of offender, including Boykin, who were sentenced before *Montgomery* held that *Miller* was retroactive. However, MCL 769.25a mirrors the pertinent requirements of MCL 769.25 and expressly incorporates the hearing procedures of MCL 769.25 without meaningful difference. See, e.g., MCL 769.25a(4)(b). Our holding thus pertains to both statutes.

statutory support for requiring trial courts to articulate the mitigating factors of defendant's youth on the record in MCL 769.25 or MCL 769.25a hearings unless life without the possibility of parole is sought.

Nor does the United States Constitution impose such a requirement. *Jones* held that an on-the-record sentencing explanation of the *Miller* factors is not necessary in cases where a life-without-parole sentence is imposed. *Jones*, 593 US at ___; 141 S Ct at 1320-1321 ("Because the Constitution does not require an on-the-record explanation of mitigating circumstances by the sentence in *death penalty cases*, it would be incongruous to require an on-the-record explanation of the mitigating circumstance of youth by the sentence in *life-without-parole cases*"). By extension, then, the Constitution also does not require an on-the-record explanation of the mitigating circumstances of youth in *term-of-years* cases.

We also find no requirement for an on-the-record articulation of how youth or the *Miller* factors affected a sentence in our caselaw. Youth matters in sentencing decisions involving juvenile offenders, and the trial court is responsible for tailoring a sentence to an individual defendant and for giving reasons for imposing each sentence in order to facilitate appellate review. *McFarlin*, 389 Mich 557; *People v Coles*, 417 Mich 523, 549; 339 NW2d 440 (1983), overruled on other grounds by *Milbourn*, 435 Mich at 635. However, like *Jones*'s observation about the Supreme Court's precedent, none of this Court's sentencing jurisprudence requires trial courts to fulfill these responsibilities by articulating *specific* factors on the record. Instead, our sentences must follow the principle of proportionality, which "requires 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich

15

at 474, quoting *Milbourn*, 435 Mich at 636. "[S]entencing courts must justify the sentence imposed in order to facilitate appellate review." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015) (citation omitted). But never before have we imposed a requirement that a sentencing court give a detailed on-the-record explanation of one or more specific factors, and we do not impose such a requirement here.

The Court of Appeals previously considered the question before us and held that there is no constitutional mandate to make specific, on-the-record findings about the *Miller* factors, but that sentencing courts should be guided by the *Snow* factors, which necessarily includes the consideration of youth as a mitigating factor. *People v Wines*, 323 Mich App 343, 352; 916 NW2d 855 (2018), rev'd in part on other grounds 506 Mich 954 (2020). We affirm the Court of Appeals holding in *Wines*, which "requires only that when the trial court exercises its discretion in sentencing a defendant that it consider the defendant's age" and is thus "consistent with the traditional penological goals expressed by this Court in [*Snow*]." *Wines*, 506 Mich 954, 958 (CLEMENT, J., concurring).

However, merely considering the mitigating qualities of youth within *Snow*'s sentencing criteria stops short of requiring trial courts to articulate a basis on the record to explain how youth affected the sentence imposed. We again look to *Jones* as a helpful guide to explain the holding in *Wines*. *Jones* explains:

> [A]n on-the-record sentencing explanation is not necessary to ensure that a sentencer considers a defendant's youth. Jones's argument to the contrary rests on the assumption that meaningful daylight exists between (i) a sentencer's discretion to consider youth, and (ii) the sentencer's actual consideration of youth. But if the sentencer has discretion to consider the defendant's youth, the sentencer necessarily *will* consider the defendant's youth, especially if defense counsel advances an argument based on the defendant's youth. Faced with a convicted murderer who was under 18 at

16

the time of the offense and with defense arguments focused on the defendant's youth, it would be all but impossible for a sentencer to avoid considering that mitigating factor. [*Jones*, 593 US at ___; 141 S Ct at 1319].

The Court of Appeals' decision in *Wines* is aligned with the sentiment expressed in *Jones*—which was another case in a long line of Supreme Court cases explaining that youth matters—as well as with Michigan sentencing caselaw and our present holding. Trial courts must consider youth as a mitigating factor in hearings conducted under MCL 769.25 or MCL 769.25a even when the defendant is sentenced to a term of years; however, this consideration need not be articulated on the record. See *Wines*, 506 Mich at 958 (CLEMENT, J., concurring).[9] In other words, there is no authority that imposes a higher standard of articulation regarding youth beyond our general requirement that a trial court must adequately explain its sentence on the record in order to facilitate appellate review. *Lockridge*, 498 Mich at 392.

## IV. APPLICATION

### A. DOCKET NO. 157738

In *Boykin II*, the Court of Appeals held that consideration of Boykin's youth was unnecessary because *Miller* only pertained to defendants who are sentenced to serve life without the possibility of parole. *Boykin II*, unpub op at 3-4. Accordingly, the majority never addressed whether the trial court properly considered youth to be a mitigating factor

---

[9] That said, nothing in this opinion deprives trial courts of the discretion to articulate how an offender's youth or the *Miller* factors apply to that particular offender's sentence. Rather, articulating how the court considered the defendant's youth when fashioning an appropriate sentence enhances an appellate court's ability to review the proportionality of that sentence.

when defendant was sentenced.  In light of our holding, we vacate that opinion and remand to the Court of Appeals to consider that question.

## B.  DOCKET NO. 158695

In *Tate*, rather than rejecting Tate's arguments, the Court of Appeals applied *Wines*. *Tate*, unpub op at 6.  The panel went on to identify ways in which it believed the trial court gave consideration to defendant's attributes of youth.  For example, the trial court commented that " 'perhaps your age, and your maturity, were working against you,' but it found that Tate 'knew exactly what [he] was doing.' " *Id*. at 7.  And the panel added that the trial court "observed that Tate 'volunteered to participate in the assassination of [the victim] . . . .' " *Id*.  Assuming that these statements comply with our requirement that youth must be a mitigating factor, they appear to only represent a small portion of the record established by the sentencing court.[10]  It bears repeating that youth is a *mitigating* factor at

---

[10] The trial court stated:

> You participated in this murder, then you ran and hid.

> You boasted, subsequence [sic] to the murder, that the Police couldn't find you, the Police couldn't get you.

> This Court, now having had the opportunity to, to see this circumstance three times, cannot comprehend why you would volunteer to participate in this execution.

> Was it a thrill seeking?  Was it an opportunity to be the man, and enhance your reputation, in your community?

> I have no idea.

> But the fact is, that perhaps your age, and your maturity, were working against you.

18

sentencing, not an aggravating factor.[11]  Although trial courts are not required to make a record that they considered each mitigating factor listed in *Miller* when sentencing these defendants, whether these statements and the totality of the record established by the trial court comply with our requirement that a trial court consider youth to be a mitigating factor is a close question deserving of additional appellate review.  Thus, we vacate Part V of the Court of Appeals opinion, which discusses Tate's sentence, and remand to the Court of Appeals for reconsideration in light of this opinion.

## V.  CONCLUSION

Sentencing courts must consider youth as a mitigating factor at sentencing hearings conducted under MCL 769.25 or MCL 769.25a when the defendant is sentenced to a term of years.  However, the court's consideration of youth need not be articulated on the record.  Therefore, the Court of Appeals was correct when it held that there is no constitutional mandate to make specific findings on the record as to the *Miller* factors but that sentencing courts should be guided by the *Snow* factors, which necessarily include consideration of youth as a mitigating factor.  *Wines*, 323 Mich App at 352.  Because it is unclear whether the trial courts properly considered youth to be mitigating in either of these consolidated

---

> But in our civilized society, you're [sic] actions, despite your age, do not make your actions forgivable.
>
> Once again, you knew exactly what you were doing.

[11] The Supreme Court left open the door to the possibility that a defendant could raise a successful Eighth Amendment challenge if a trial court "expressly refuses *as a matter of law* to consider relevant mitigating circumstances." *Jones*, 593 US at ___ n 7; 141 S Ct at 1320 n 7.  A defendant may also raise a successful sentencing challenge if the sentencing court refuses to consider relevant mitigating factors or circumstances as mitigating.

19

cases, yet the Court of Appeals affirmed the trial courts' sentencing decisions, we vacate the portions of both Court of Appeals opinions discussing defendants' sentencing challenges, and we remand both cases to the Court of Appeals for further consideration not inconsistent with this opinion.

Richard H. Bernstein
Bridget M. McCormack
Elizabeth T. Clement (except as to
                    Part IV(B))
Megan K. Cavanagh
Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                          No. 157738

DEMARIOL DONTAYE BOYKIN,

       Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                          No. 158695

TYLER MAURICE TATE,

       Defendant-Appellant.

MCCORMACK, C.J. (*concurring*).

I concur fully in the majority opinion. I write separately to say more about the majority's conclusion that the Michigan Constitution does not contain a requirement that a trial court articulate on the record how it considered the mitigating characteristics of youth when it sentences a juvenile defendant to a sentence other than life without the possibility of parole. The United States Supreme Court has made clear that "children are different" for sentencing purposes and that sometimes, a sentencing court may not constitutionally sentence a juvenile without considering the mitigating characteristics of youth. *Miller v Alabama*, 567 US 460, 480; 132 S Ct 2455; 183 L Ed 2d 407 (2012); see also *Graham v*

*Florida*, 560 US 48, 76; 130 S Ct 2011; 176 L Ed 2d 825 (2010); *Roper v Simmons*, 543 US 551; 125 S Ct 1183; 161 L Ed 2d 1 (2005). Exactly how that principle applies in interpreting the Michigan Constitution has not been explored in these cases and is therefore left for another day.

The Michigan Constitution played a backseat role throughout these cases' progression through the trial and appellate courts; it was not until defendant Tyler M. Tate's supplemental brief in this Court that it made its first appearance. And then, Tate argued that his 40-year minimum sentence was disproportionate under Article 1, § 16 of the Michigan Constitution and our decision in *People v Bullock*, 440 Mich 15; 485 NW2d 866 (1992). But *Bullock*'s four-factor test for evaluating the proportionality of a particular sentence does not address Tate's argument that Article 1, § 16 requires an on-the-record explanation of how the mitigating characteristics of youth affected a trial court's sentencing decision for the sentence imposed to be constitutional. See, e.g., *State v Null*, 836 NW2d 41, 74 (Iowa, 2013) ("We think the direction from the Supreme Court that trial courts consider everything said about youth in *Roper*, *Graham*, and *Miller* means more than a generalized notion of taking age into consideration as a factor in sentencing. . . . [W]e conclude article I, section 17 [of the Iowa Constitution] requires that a district court recognize and apply the core teachings of *Roper*, *Graham*, and *Miller* in making sentencing decisions for long prison terms involving juveniles."). Tate's argument is therefore a poor fit with the authority he cites.

But we know youth matters in sentencing under the state Constitution as well as the federal Constitution. See *People v Stovall*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162425). While neither the statutory scheme nor the federal Constitution categorically

2

requires an on-the-record articulation of how the characteristics of youth affect a sentencing court's decision, the Court correctly rules that sentencing courts must consider those characteristics and treat them as mitigating. A trial court's failure to do so explicitly on the record, notwithstanding no *categorical* rule requiring it, stands a high chance of rendering its sentence a violation of Article 1, § 16, and therefore necessarily an abuse of its discretion. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013) ("A trial court necessarily abuses its discretion when it makes an error of law.").

And whether a categorical rule may be constitutionally required under Article 1, § 16 is a question left for another day. The principles animating *Miller*, *Graham*, and *Roper* apply no less forcefully in this context. Those principles, together with our precedent requiring individualized sentencing, see *People v McFarlin*, 389 Mich 557, 574; 208 NW2d 504 (1973), may render a sentence where the effect of youth is unexplained at such high risk of violating those principles as to be constitutionally impermissible. See generally *Null*, 836 NW2d at 74.

Bridget M. McCormack

3

# S T A T E  O F  M I C H I G A N

# SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 157738

DEMARIOL DONTAYE BOYKIN,

      Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 158695

TYLER MAURICE TATE,

      Defendant-Appellant.

_____

CLEMENT, J. (*concurring in part and dissenting in part*).

Consistently with my concurring statement in *People v Wines*, 506 Mich 954, 958 (2020) (CLEMENT, J., concurring), I agree with the majority that trial courts are required to consider the mitigating effects of youth when sentencing a juvenile to a term-of-years sentence because youth affects the traditional penological goals that guide a sentencer's discretion. See *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). Within this context, the United States Supreme Court's discussion of the mitigating effects of youth in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), is relevant in understanding how youth relates to those traditional penological goals. Neither this

decision nor *Wines* holds that the Eighth Amendment requires specific consideration of each attribute of youth identified in *Miller*, nor does either decision require that the trial court make explicit findings as to each of those attributes on the record. Although this Court has chosen elsewhere to extend *Miller*, see, e.g., *People v Stovall*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162425); *People v Parks*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162086), the majority opinion in this case does not do so, and accordingly, I concur with its holding that the mitigating effects of youth must be considered during term-of-years juvenile sentencing.

While I agree with the majority's iteration of this general rule, I respectfully dissent as to the majority's application of that rule to defendant Tate. At Tate's sentencing, the trial court listened to defense counsel's youth-based leniency arguments and noted that it had also reviewed Tate's presentence investigation report, which contained additional material about Tate's age, family environment, and criminal history. The trial court acknowledged that "perhaps [Tate's] age, and [his] maturity, were working against [him]," but also highlighted Tate's volunteered and intentional role in the murder, his flight from and lengthy evasion of law enforcement, his lack of remorse, and his "violent, deplorable" nature. On the basis of this full consideration of Tate's background and the nature of the offense, the trial court sentenced him to a 40- to 60-year term of imprisonment. The trial court's record of its decision-making sufficiently justified the sentence imposed in order to facilitate appellate review, the sole articulation requirement mandated by our sentencing jurisprudence. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

Despite this, the majority now chooses to remand this case to the Court of Appeals for reconsideration, explaining that the trial court's comments "appear to only represent a

2

small portion of the record established by the sentencing court" and that "whether these statements and the totality of the record established by the trial court comply with our requirement that a trial court consider youth to be a mitigating factor is a close question deserving of additional appellate review." In my opinion, this disposition on the basis of the brevity of the trial judge's statements deeply muddies—if not outright contradicts—the majority's holding that no statutory or constitutional authority compels the trial court to make an on-the-record explanation of its consideration of youth. To the extent that the majority may believe that Tate is deserving of a shorter minimum sentence because of the mitigating effects of youth (i.e., that the trial court weighed the mitigating effects of youth incorrectly), that is a proportionality issue that should be addressed by this Court and not remanded to the Court of Appeals, which has already considered and rejected Tate's proportionality argument.

Elizabeth T. Clement

# STATE OF MICHIGAN

# SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                        No. 157738

DEMARIOL DONTAYE BOYKIN,

      Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                        No. 158695

TYLER MAURICE TATE,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

I dissent from the majority's decision. The majority opinion concludes that "[s]entencing courts must consider youth as a mitigating factor at sentencing hearings conducted under MCL 769.25 or MCL 769.25a when the defendant is sentenced to a term of years," but that "the court's consideration of youth need not be articulated on the record."[1] To the extent the majority opinion holds that a juvenile homicide offender's youth operates as a mitigating factor for purposes of sentencing, I take no exception, as

---

[1] *Ante* at 19.

"*Miller* [*v Alabama*] repeatedly described youth as a sentencing factor akin to a mitigating circumstance."[2]  But the majority opinion's holding is not so narrow.  Instead, the majority opinion concludes more broadly that when sentencing a juvenile homicide offender to a term of years under MCL 769.25 and MCL 769.25a, sentencing courts are *required* to consider the mitigating qualities of youth within the penological objectives outlined in *People v Snow*[3] and that a failure to adequately consider those mitigating qualities will result in reversal.  I do not agree with this broader holding, as it lacks precedential support and runs counter to the guidance provided by the Supreme Court of the United States that "an on-the-record sentencing explanation is not necessary to ensure that a sentencer considers a defendant's youth" because a sentencer that has the discretion to consider a defendant's youth "necessarily *will* consider the defendant's youth . . . ."[4]  I would not upset our Legislature's policy choice of declining to extend *Miller*—which until now has only applied to this state's juvenile homicide offenders facing life without parole—to term-of-years sentences imposed under MCL 769.25 and MCL 769.25a.  Instead, I would hold that traditional sentencing considerations apply to these sentencing hearings; that is, when deciding what constitutes an appropriate term-of-years sentence for a juvenile homicide offender, a sentencing court should ultimately be guided by the principle of proportionality,

---

[2] *Jones v Mississippi*, 593 US ___, ___; 141 S Ct 1307, 1315; 209 L Ed 2d 390 (2021), citing *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

[3] *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972) (providing the following penological objectives of sentencing: (1) "reformation of the offender," (2) "protection of society," (3) punishment of the offender, and (4) "deterrence of others from committing like offenses").

[4] *Jones*, 593 US at ___; 141 S Ct at 1319.

which aims to tailor the sentence to the particular offense and offender before it and which *may* require the court to consider how the offender's age correlates with the sentence imposed. Applying that standard, I would affirm each defendant's sentence, as both sentencing courts adequately explained the sentences imposed in relation to each defendant and their offenses and, therefore, did not abuse their discretion in sentencing defendants to 40 to 60 years' imprisonment.

## I.  APPLICABLE LAW

### A.  UNITED STATES SUPREME COURT PRECEDENT

In 2012, the Supreme Court of the United States held in *Miller* that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"[5]  The Supreme Court explained that "children are constitutionally different from adults for purposes of sentencing," citing the following three grounds:

> First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings.  And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity.[6]

Given these asserted differences, the *Miller* Court concluded that subjecting juveniles to the same mandatory life-without-parole sentence applicable to adults

---

[5] *Miller*, 567 US at 465.

[6] *Id*. at 471 (citations, quotation marks, ellipses, and brackets omitted).

3

contravened the "foundational principle" from the Court's prior decisions in *Roper v Simmons*[7] and *Graham v Florida*[8]: "that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children."[9]  Unlike *Graham* and *Roper*, however, the Court in *Miller* did "not categorically bar a penalty for a class of offenders or type of crime[.]"[10]  Instead, *Miller* "allowed life-without-parole sentences for defendants who committed homicide when they were under 18, but only so long as the sentence is not mandatory—that is, only so long as the sentencer has discretion to 'consider the mitigating qualities of youth' and impose a lesser punishment."[11]  Accordingly, before imposing life without parole on a juvenile homicide offender, a sentencing court must have the opportunity to consider: "[a defendant's] chronological age and its hallmark features— among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; whether "he might have been charged

---

[7] *Roper v Simmons*, 543 US 551, 578; 125 S Ct 1183; 161 L Ed 2d 1 (2005) (holding that the Eighth Amendment bars the imposition of the death penalty on offenders under the age of 18).

[8] *Graham v Florida*, 560 US 48, 74; 130 S Ct 2011; 176 L Ed 2d 825 (2010) (holding "that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole").

[9] *Miller*, 567 US at 474.

[10] *Id*. at 483.

[11] *Jones*, 593 US at ___; 141 S Ct at 1314 (emphasis omitted), quoting *Miller*, 567 US at 476.

[with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and "the possibility of rehabilitation . . . ."[12] These are commonly referred to as the *Miller* factors.

Four years later, in *Montgomery v Louisiana*, the Supreme Court held that *Miller* applies retroactively to juvenile homicide offenders whose convictions and sentences were final when *Miller* was decided.[13] Yet *Montgomery* did nothing to change the limited scope of *Miller*'s holding. As the Supreme Court recently stated in *Jones v Mississippi*, "*Miller* cited *Roper* and *Graham* for a simple proposition: Youth matters in sentencing. And because youth matters, *Miller* held that a sentencer must have discretion to consider youth before imposing a life-without-parole sentence . . . ."[14] The Court in *Jones* further explained that "an on-the-record sentencing explanation . . . is not necessary to ensure that a sentencer considers a defendant's youth . . . ."[15] At bottom, "*Miller* required a discretionary sentencing procedure" only for those juvenile homicide offenders subject to life without parole, and "the Court did not suggest that those discretionary sentencing regimes required some kind of sentencing explanation."[16]

---

[12] *Miller*, 567 US at 477-478.

[13] *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016).

[14] *Jones*, 593 US at ___; 141 S Ct at 1316.

[15] *Id*. at ___; 141 S Ct at 1319.

[16] *Id*. at ___, ___; 141 S Ct at 1317, 1320.

## B. MICHIGAN LAW

In response to *Miller*, our Legislature enacted MCL 769.25 and MCL 769.25a.[17] Under these statutes, if the prosecuting attorney files a motion seeking imposition of a life-without-parole sentence on a juvenile homicide offender convicted of certain enumerated offenses, including first-degree murder, the sentencing court must conduct a hearing on that motion as part of the sentencing process.[18] At that hearing, the sentencing court is statutorily required to "consider the factors listed in [*Miller*]" and to "specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed."[19] If the prosecutor does not seek life without parole, however, the sentencing court is not required to conduct such a hearing. Instead, the statutes require the court to sentence the offender to a term of years in which the minimum sentence is no less than 25 years and no more than 40 years and the maximum sentence is no less than 60 years.[20] That is, absent a motion from the prosecutor seeking life without parole, there is no statutory obligation for the sentencing court to consider the

---

[17] MCL 769.25a was enacted in anticipation that the United States Supreme Court would hold that *Miller* applies retroactively. It provides essentially the same substantive relief as MCL 769.25.

[18] MCL 769.25(2), (3), (6); MCL 769.25a(4)(b).

[19] MCL 769.25(6); MCL 769.25(7). The trial court is permitted to "consider any other criteria relevant to its decision, including the individual's record while incarcerated," MCL 769.25(6), as well as "evidence presented at trial," MCL 769.25(7).

[20] MCL 769.25(4), (9); MCL 769.25a(4)(c). A juvenile homicide offender benefiting from *Montgomery*'s holding that *Miller* applies retroactively and who is not subject to a life-without-parole sentence, like Boykin, would actually receive a maximum sentence of exactly 60 years, MCL 769.25a(4)(c), whereas a juvenile whose convictions and sentences were final after *Miller*, like Tate, would receive a maximum sentence of "not less than 60 years," MCL 769.25(9). Both Tate and Boykin received 40- to 60-year sentences.

*Miller* factors, nor is the court required to state on the record the aggravating and mitigating circumstances the court considered in sentencing the juvenile homicide offender to a term of years.

The lack of statutory guidance for sentencing courts imposing term-of-years sentences under MCL 769.25 and MCL 769.25a does not mean that those courts may simply rubber-stamp the maximum allowable sentence under those statutes. Rather, this Court in *People v Milbourn* stated that "with regard to the judicial selection of an individual sentence within the statutory minimum and maximum for a given offense," judicial sentencing discretion is to be exercised according to the "principle of proportionality," which "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."[21] In order "to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing . . . , the judge, of course, must take into account the nature of the offense and the background of the offender."[22] Further, in order to facilitate appellate review of a sentence, a sentencing court must justify the sentence imposed by articulating the criteria on which it relied to fashion a sentence that is proportionate to the offense and the offender.[23] Whether the sentence imposed violates the

---

[21] *People v Milbourn*, 435 Mich 630, 635-636; 461 NW2d 1 (1990). See also *People v Steanhouse*, 500 Mich 453, 459-460, 474-475; 902 NW2d 327 (2017).

[22] *Milbourn*, 435 Mich at 651.

[23] *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015) ("[S]entencing courts must justify the sentence imposed in order to facilitate appellate review."), citing *People v Coles*, 417 Mich 523, 550; 339 NW2d 440 (1983) (requiring "that the trial court state on the record which criteria were considered and what reasons support the court's decision

7

principle of proportionality is reviewed for an abuse of discretion, which occurs when the outcome falls outside the range of reasonable and principled outcomes.[24]

## II. ANALYSIS

The majority opinion holds that sentencing courts are required to consider the mitigating qualities, circumstances, and factors of youth within the penological objectives outlined in *Snow* (reformation, protection, punishment, and deterrence) when sentencing a juvenile homicide offender to a term-of-years sentence under MCL 769.25 and MCL 769.25a. It stresses, however, that an on-the-record explanation of those mitigating qualities is not necessary and claims that its holding falls short of requiring courts to articulate how the *Miller* factors—which the Supreme Court has also characterized as "mitigating qualities," "mitigating circumstances," "mitigating factors," and "distinctive attributes" of youth[25]—affected the term-of-years sentence. This holding, convoluted as it is, lacks legal support of any kind: it is not required by the United States or Michigan Constitution; it is not required by statute; and it is not required by precedent.

The majority opinion derives its holding from *Miller*, but the Supreme Court's holding in *Miller* was limited: it corrected the constitutional infirmity of sentencing schemes *mandating life without parole* for juvenile homicide offenders by requiring that sentencers be given the *opportunity to consider* the mitigating qualities of youth and the

regarding the length and nature of punishment imposed"), overruled in part on other grounds by *Milbourn*, 435 Mich 630.

[24] *People v Skinner*, 502 Mich 89, 131-132; 917 NW2d 292 (2018); *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

[25] *Miller*, 567 US at 472, 476, 489 (quotation marks and citations omitted).

8

*discretion* to impose a lesser sentence.[26]  Nowhere in *Miller*—or *Roper*, *Graham*, or *Jones*—did the Court state that sentencers *must* consider the distinctive attributes of a juvenile homicide offender's youth when imposing a sentence *less than life without parole*. Although the Court in *Jones* suggested that the broader rationale of *Roper*, *Graham*, and *Miller* is that "youth matters in sentencing,"[27] their holdings are limited to the specific sentences before the Court.  In any event, the proposition that youth matters in sentencing is hardly a novel statement of blackletter law that can be first attributed to the *Roper-Graham-Miller* trilogy.  *Miller* itself stated that the differences between juvenile and adult offenders are commonsensical and confirm what " 'any parent knows,' "[28] and society has long recognized that an offender's age may warrant a less severe punishment.[29]  I would

_____

[26] *Id*. at 479 (holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," and that "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment").  See also *Jones*, 593 US at ___; 141 S Ct at 1316 ("[T]he *Miller* Court stated that a judge or jury must have the opportunity to consider the defendant's youth and must have discretion to impose a different punishment than life without parole.") (quotation marks and citation omitted); *Skinner*, 502 Mich at 120 ("*Miller* simply held that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment and that before such a sentence can be imposed on a juvenile, the sentencer must consider the mitigating qualities of youth.").

[27] *Jones*, 593 US at ___; 141 S Ct at 1316.

[28] *Miller*, 567 US at 471, quoting *Roper*, 543 US at 569.

[29] See *People v Fields*, 448 Mich 58, 77; 528 NW2d 176 (1995) (stating that a defendant's age is a relevant factor to determining whether a departure from the guidelines minimum sentence range is warranted and that "courts often cite the young age of a defendant as a reason to deviate from a minimum sentence").  See also *Goodwin v Iowa District Court for Davis Co*, 936 NW2d 634, 652 (Iowa, 2019) (McDonald, J., concurring) (explaining that the neuroscience evidence supporting the claim that juvenile offenders are less culpable than adult offenders "does not tell us something new for which the law did not already account"); see also *id*., quoting Sanders, ed, *Juvenile Offenders for a Thousand Years: Selected Readings from Anglo-Saxon Times to 1900* (Chapel Hill: University of North

not use the "simple proposition"[30] that youth matters in sentencing as a basis to extend *Roper*, *Graham*, and *Miller* beyond their own terms as the majority opinion does here.

The majority's holding also has no basis in this state's jurisprudence. MCL 769.25 and MCL 769.25a do not require sentencing courts to consider mitigating qualities of youth when sentencing a juvenile homicide offender to a term of years. In fact, the Legislature requires courts to consider *Miller*'s mitigating factors only when the sentence sought is life without parole. The Legislature's omission of this requirement when the sentence sought is a term of years is presumed to be intentional,[31] and it represents a policy choice made by the Legislature that the judiciary may not second-guess or override.[32] Further, by enacting MCL 769.25 and MCL 769.25a, the Legislature put in place a scheme that necessarily accounts for a juvenile homicide offender's youth, even when the sentence imposed is a term of years. That is, the prosecution's decision not to file a motion seeking life without parole means that the defendant is benefiting from *Miller* by receiving a term-of-years

---

Carolina Press, 1970), p xviii (" '[A]s far back as written records go children who have broken the law have been treated on the whole more leniently than have adult offenders.' ").

[30] *Jones*, 593 US at ___; 141 S Ct at 1316.

[31] *People v Lewis*, 503 Mich 162, 167; 926 NW2d 796 (2018).

[32] See *People v McIntire*, 461 Mich 147, 152; 599 NW2d 102 (1999) ("[O]ur judicial role precludes imposing different policy choices than those selected by the Legislature . . . ."); *People v Morris*, 450 Mich 316, 336; 537 NW2d 842 (1995) ("[J]udicial misgivings regarding the wisdom of the policy do not provide a legal foundation for overriding legislative intent. . . . The wisdom of the policy is a political question to be resolved in the political forum. To reach a contrary result would be simply to repudiate the legislative choice.").

sentence and not being subject to the law's harshest term of imprisonment.[33]   Thus, not only are MCL 769.25 and MCL 769.25a "constitutionally necessary and constitutionally sufficient,"[34] the manner by which these statutes operate ensures that a juvenile homicide offender's youth is being taken into account at sentencing.

Moreover, while courts fashioning a proportionate sentence must take into account an offender's background, which would include the offender's age, there is "no basis in *Milbourn* for a requirement that the trial judge tailor every defendant's sentence in relationship to the defendant's age."[35]   "A judge *may* . . . consider a defendant's age at sentencing in deciding whether the sentence about to be imposed is proper, just as the judge considers the recommended range under the guidelines and any other factors not expressly prohibited by law."[36]   Simply put, "*Miller* mandated 'only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing' a life-without-parole sentence."[37]   Accordingly, *Miller* does not alter this state's sentencing jurisprudence for juvenile homicide offenders facing a lesser sentence.

---

[33] See, e.g., *James v United States*, 59 A3d 1233, 1238 (DC, 2013) (explaining that the sentencing statute necessarily takes into account juvenile homicide offenders' youth and its attendant characteristics "by limiting the minimum sentence to thirty years for offenders under the age of eighteen at the time of their offense, as compared to life imprisonment without opportunity for release which is available against adults").

[34] *Jones*, 593 US at ___; 141 S Ct at 1313.

[35] *People v Lemons*, 454 Mich 234, 258; 562 NW2d 447 (1997).

[36] *Id*. at 259 (emphasis added).

[37] *Jones*, 593 US at ___; 141 S Ct at 1314, quoting *Miller*, 567 US at 483.

Given that sentencing courts are not required to articulate an on-the-record explanation of how youth or the *Miller* factors affect a term-of-years sentence imposed under MCL 769.25 or MCL 769.25a, there is no legal basis for affirming the Court of Appeals decision in *People v Wines*.[38] Despite recognizing that "there is no *constitutional* mandate requiring the trial court to specifically make findings as to the *Miller* factors except in the context of a decision whether to impose a sentence of life without parole," the Court of Appeals in *Wines* nonetheless concluded that "when the sentence of life imprisonment without parole is not at issue, the [sentencing] court should be guided by a balancing of the *Snow* objectives and in that context is required to take into account the attributes of youth, such as those described in *Miller*."[39] According to *Wines*, "[t]he process of properly balancing [the *Snow*] objectives in the case of a minor defendant necessitates consideration of the distinctive attributes of youth," and "a failure to consider the distinctive attributes of youth, such as those discussed in *Miller*," when imposing a term-of-years sentence under MCL 769.25 and MCL 769.25a amounts to an abuse of discretion warranting reversal.[40]

There are a number of issues with the Court of Appeals' holding in *Wines* that the majority opinion fails to address. For example, *Wines* was incorrect to suggest that *Miller*'s holding requires courts to make specific findings regarding the *Miller* factors when deciding whether to impose life without parole—a requirement the Supreme Court of

---

[38] *People v Wines*, 323 Mich App 343; 916 NW2d 855 (2018), rev'd in part on other grounds 506 Mich 954 (2020).

[39] *Id*. at 352.

[40] *Id*. at 351-352.

United States and this Court have rejected.[41]  Further, *Miller*'s *only* holding was that mandatory life without parole for juveniles violates the Eighth Amendment.  Thus, there is no basis to apply it outside that constitutional context.[42]  *Wines* also failed to recognize that *Snow*'s penological objectives "are not the only relevant criteria" for determining an appropriate sentence and that they do not instruct trial courts "on every factor they must consider when imposing [a] sentence."[43]  And nowhere in *Wines* did the panel discuss the principle of proportionality.  Finally, the Court of Appeals' holding in *Wines* is unclear as to what exactly courts are required to consider when life without parole is not at issue.  Particularly, it failed to explain whether " 'taking into account the attributes of youth' [is] distinguishable in some way from considering the *Miller* factors and, if so, what is that distinction?"[44]  The majority opinion adds to the confusion left by *Wines*'s holding by requiring sentencing courts to consider "the mitigating qualities of youth within *Snow*'s sentencing criteria"[45]—which do not represent an exhaustive list of criteria to be considered in fashioning an appropriate sentence—but failing to explain how a court's

---

[41] See *Jones*, 593 US at ___; 141 S Ct 1307 (rejecting the argument that *Miller* imposed a formal fact-finding requirement); *Skinner*, 502 Mich 89 (same).

[42] Indeed, nothing in the majority's opinion suggests a 40- to 60-year sentence for a juvenile homicide offender is unconstitutional.

[43] *People v Broden*, 428 Mich 343, 350; 408 NW2d 789 (1987), citing *Coles*, 417 Mich 550.

[44] *People v Wines*, 506 Mich 954, 957 (2020) (MARKMAN, J., concurring in part and dissenting in part) (brackets omitted).

[45] *Ante* at 16.

13

consideration of mitigating qualities within *Snow*'s framework differs from consideration of the mitigating factors articulated in *Miller*.[46]

The majority opinion contends that *Jones* provides helpful guidance to explain the holding of *Wines*. I agree we should heed the words of *Jones*, particularly its discussion of what *Miller* requires (a discretionary sentencing procedure for juvenile homicide offenders subject to life without parole) and does not require (an on-the-record consideration of the offender's youth and its attendant characteristics). Yet the majority opinion fails to do just that by affirming *Wines* and *requiring* sentencing courts to consider a juvenile homicide offender's youth as a mitigating factor when imposing a term-of-years sentence under MCL 769.25 and MCL 769.25a. As the Court stated in *Jones*, "[I]f the sentencer has discretion to consider the defendant's youth, the sentencer necessarily *will* consider the defendant's youth," as "it would be all but impossible for a sentencer to avoid considering that mitigating factor" when tasked with sentencing a juvenile homicide offender.[47] In other words, there is no need to *require* sentencing courts to consider a juvenile homicide offender's youth in whatever manner the majority opinion now demands; youth is necessarily taken into account by giving courts *the discretion* to do so.

---

[46] Even the majority opinion's modified-*Snow* framework leaves many questions unanswered. Are sentencing courts required to consider each of the modified *Snow* factors when sentencing a juvenile homicide offender to a term of years under MCL 769.25 and MCL 769.25a? Is a discussion of those factors alone sufficient for sentencing courts to provide an adequate consideration of youth? What if, instead, the sentencing court addresses some or all of the *Miller* factors and fails to address some or all of the *Snow* factors? Under what circumstance is a sentencing court's consideration of a juvenile homicide offender's youth enough to satisfy appellate review of the term-of-years sentence?

[47] *Jones*, 593 US at ___; 141 S Ct at 1319.

14

Also, nothing prevents defense counsel from arguing that mitigating factors of youth favor a lenient sentence. The majority opinion simply pays lip service to *Jones* and, instead, reads as though youth is the only factor sentencing courts are to consider when sentencing juvenile homicide offenders. This Court has rejected that notion, explaining—in the context of whether to impose a life-without-parole sentence—that while "an offender's age is likely to be given significant weight in the court's deliberations and may well constitute the single best factor for ascertaining whether a *Miller*-benefited offender would actually gain relief," it is not "the exclusive factor that the trial court should consider in imposing a sentence on a juvenile homicide offender."[48] Accordingly, not only does a juvenile homicide offender necessarily benefit from *Miller* by receiving a term-of-years sentence instead of life without parole, but contrary to the majority opinion's suggestion, the "mitigating qualities" and "distinctive attributes" of youth discussed in *Miller* do *not* represent an exclusive or exhaustive list of the criteria sentencers are to consider for *all* juvenile homicide offenders.

In sum, there exists no constitutional, statutory, or judicial directive *requiring* sentencing courts to consider the mitigating qualities of youth when imposing term-of-years sentences under MCL 769.25 and MCL 769.25a. Absent such a directive, I would not extend *Miller*'s limited constitutional holding in whatever manner the majority opinion now extends it by affirming the Court of Appeals' decision in *Wines*. Instead, I would hold that traditional sentencing considerations apply to these sentencing hearings. That is, when deciding what constitutes an appropriate term-of-years sentence for a juvenile homicide

---

[48] *People v Carp*, 496 Mich 440, 520; 852 NW2d 801 (2014), cert gtd and opinion vacated on other grounds sub nom *Carp v Michigan*, 577 US 1186 (2016).

offender, a sentencing court should ultimately be guided by the principle of proportionality, which aims to tailor the sentence to the particular offense and offender before it and which *may* require the court to consider how the offender's age correlates with the sentence imposed. By extending *Miller* to a whole new class of sentences, the majority opinion undermines the policy choices made by the Michigan Legislature in enacting MCL 769.25 and MCL 769.25a, which do not require sentencing courts to consider the *Miller* factors, the "distinctive attributes of youth," or "the mitigating qualities of youth" when imposing a term-of-years sentence.

## III. APPLICATION

Tellingly, the majority opinion does not even attempt to apply its holding to the facts of these two cases—at least not with any meaningful guidance. In *Boykin*, the majority opinion concludes that the Court of Appeals failed to address whether the sentencing court properly considered youth as a mitigating factor and that the panel instead held that consideration of Boykin's youth was unnecessary because *Miller* only applies to defendants sentenced to life without parole. Contrary to the majority opinion's assertion, the Court of Appeals did not hold that consideration of Boykin's youth was unnecessary; it rejected Boykin's sweeping argument that *Miller* requires juveniles to be considered differently for purposes of sentencing and that the sentencing court was required to consider the *Miller* factors. Given that *Miller* only applies to juvenile homicide offenders facing life without parole, and because MCL 769.25 and MCL 769.25a already treat juvenile homicide offenders differently than adult offenders, the panel correctly rejected

16

Boykin's argument. Further, the panel *did* actually address the sentencing court's consideration of Boykin's youth as a mitigating factor in the context of *Miller*, stating:

> Though not mandated by *Miller*, the trial court actually did consider the *Miller* factors when resentencing defendant. The trial court stated that it was considering all the *Miller* factors and specifically mentioned its consideration of defendant's psychological evaluations, defendant's childhood, and his misconducts while in prison involving intoxicating substances and weapons. Evaluating these factors, the trial court determined that defendant's youth and immaturity were not an excuse for his conduct, and that "there was nothing to suggest here anything other than this was a cold, calculated, premeditated killing of an innocent human being who represented no threat to defendant."[49]

The sentencing court also incorporated the penological objectives into its sentencing, stating in its conclusion that "[b]ased on everything presented . . . , confinement is necessary for punishment, for the protection of this community, and the hope of Mr. Boykin's rehabilitation in a more controlled environment." In light of the sentencing court's express incorporation of the *Miller* factors, its extensive discussion of how those factors affected the sentence imposed, and its consideration of *Snow*'s penological objectives, it is difficult to see what more the sentencing court could have done to warrant an affirmance of Boykin's sentence.

Boykin argues that the sentencing court did not consider his youth as a mitigating factor. Boykin's argument is largely based on the court's comments that he was a mere 80 days shy of turning 18 when he committed the murder and that he "certainly was of a mature age and cannot blame youth or immaturity as an excuse for this conduct." Boykin's argument lacks merit for several reasons. First, when imposing its sentence, the court

---

[49] *People v Boykin*, unpublished per curiam opinion of the Court of Appeals, issued March 20, 2018 (Docket No. 335862), p 4 n 2 (brackets omitted).

expressly incorporated and considered the *Miller* factors, which are mitigating by nature.[50]

Second, *Roper* recognized that some juveniles "have already attained a level of maturity some adults will never reach,"[51] and *Miller* contemplated sentencers considering a juvenile homicide offender's age as compared to other juveniles.[52] Accordingly, the sentencing court's reference to Boykin's age in proximity to turning 18 and its statement that he "certainly was of a mature age" is consistent with the Supreme Court's recognition that not all juveniles are necessarily immature. Third, the court's statement that Boykin "cannot blame youth or immaturity as an excuse for this conduct" is not the equivalent of refusing, as a matter of law, to consider his youth as a mitigating factor; rather, the court was simply weighing Boykin's youth and one of its hallmark characteristics against defendant's intentional homicidal acts.[53] Although youth is undisputedly a mitigating factor, it does not serve as a justification for committing society's most heinous crime. And, as detailed by the sentencing court, Boykin's offense was indeed heinous. Boykin was the shooter

---

[50] See *Skinner*, 502 Mich at 115 ("It is undisputed that all of [the *Miller*] factors are mitigating factors.").

[51] *Roper*, 543 US at 574.

[52] *Miller*, 567 US at 477, 480 n 8 (explaining that sentencing schemes mandating life without parole demanded that "every juvenile . . . receive the same sentence as every other—the 17-year-old and the 14-year-old, the shooter and the accomplice, the child from a stable household and the child from a chaotic and abusive one"—and therefore requiring that sentencers "take into account the differences among defendants and crimes" to remedy the constitutional problem with those schemes).

[53] See *Jones*, 593 US at ___; 141 S Ct at 1320 n 7 (contrasting a potentially viable Eighth Amendment claim when the sentencer "refuses as a matter of law to consider the defendant's youth" with a sentencer "deeming the defendant's youth to be outweighed by other factors or deeming the defendant's youth to be an insufficient reason to support a lesser sentence under the facts of the case," which is permissible).

and the aggressor; he brought a gun to a fistfight that he was not involved in; he shot the victim in the back three or four times as the victim tried to run away; and he admitted trying to fire the gun as it was pressed against the victim's cheek. When the gun jammed, Boykin instead kicked the victim repeatedly as he lay dying on the sidewalk before fleeing the scene. In short, the sentencing court considered Boykin's background and his youth as mitigating factors but concluded that the aggravating nature of the homicide supported a sentence of 40 to 60 years' imprisonment. This was not an abuse of discretion.

In *Tate*, the majority opinion recognizes that the sentencing court expressly considered Tate's youth but states that the court's comments represent only a small portion of the record and suggests that more is required to comply with the majority opinion's requirement that sentencing courts consider youth as a mitigating factor. This result is puzzling for a number of reasons. First, it contradicts the majority opinion's own holding that sentencing courts need not even articulate their bases for considering an offender's youth when imposing a term-of-years sentence under MCL 769.25 and MCL 769.25a. Second, it turns a juvenile homicide offender's age into the preeminent consideration for courts imposing a term-of-years sentence under MCL 769.25 and MCL 769.25a, thereby downplaying the severity of the offender's crimes and the impact on the victims and their families. Third, it flies in the face of this state's own practice of affirming sentences when the sentencer has adequately explained the reasons for imposing its sentence.[54] Here, the

---

[54] See *Lockridge*, 498 Mich at 392, citing *Coles*, 417 Mich at 550. See also *Jones*, 593 US at ___; 141 S Ct at 1321 ("[W]hen a state judge imposes a sentence of imprisonment, particularly a lengthy sentence, the judge often will explain both the sentence and the judge's evaluation of any mitigating circumstances. . . . Even when state law requires a sentencer to supply reasons, many States do not impose a formulaic checklist of topics or a magic-words requirement with respect to particular mitigating circumstances. And

record establishes that the sentencing court adequately explained the reasons for imposing its sentence and considered how Tate's youth affected that sentence. Tate's counsel advocated for a 25-year minimum sentence, focusing on Tate's young age and arguing that such a sentence would serve the traditional penological objectives. "Faced with a convicted murderer who was under 18 at the time of the offense and with defense arguments focused on the defendant's youth, it [was] all but impossible for [the sentencing court] to avoid considering that mitigating factor."[55] Moreover, as recounted by the Court of Appeals, the sentencing court explicitly considered Tate's youth and its attendant characteristics as a mitigating circumstance in fashioning its sentence:

> [T]he trial court considered Tate's youth and maturity level, commenting that "perhaps your age, and your maturity, were working against you," but it found that Tate "knew exactly what he was doing." Tate argues that the trial court failed to consider his lesser degree of culpability in comparison to [codefendant Brendon] Stanton-Lipscomb. Tate emphasizes that his role was "vastly different" than Stanton-Lipscomb, who was determined to shoot [Tyrell] Lane regardless of Tate's involvement. Contrary to what Tate argues, the trial court did discuss Tate's role in the offense in comparison to Stanton-Lipscomb's role. The court acknowledged that Tate "did not start the process of this execution," but it found that he was a willing participant in the plan to kill a young man, and that Tate played a "very active role in the cold and calculated assassination of a very young man, Mr. Lane." The court also observed that Tate "volunteered to participate in the assassination of Mr. Lane" after Taylor had refused to do so.
>
> Further, Tate's efforts to distinguish his culpability from Stanton-Lipscomb's culpability are unavailing considering that they did not receive similar sentences. Stanton-Lipscomb received a mandatory sentence of life without parole. Although the prosecution could have requested a life-without-parole sentence for Tate, it did not. The differences in the culpability

---

appellate courts do not necessarily reverse merely because the sentencer could have said more about mitigating circumstances.").

[55] *Id*. at ___; 141 S Ct at 1319.

are, therefore, reflected in the decision not to pursue a sentence that would have subjected Tate to imprisonment for life without parole.[56]

Tate also asserts that he was "cooperative, articulate, and well-spoken during the presentence interview," and "expressed remorse for the victim's family." However, the trial court commented that it was struck by Tate's statement in the presentence report that "I have nothing to do with it." The court also found that Tate's post-offense messages on Facebook showed that he had no remorse and showed that he was "a violent, deplorable young man who will continue to be violent, if allowed to do so." Evidence at trial indicated that, after the offense, Tate eluded and lied to the police, and boasted about how he would not be captured for his role in the shooting.[57]

Like Boykin, Tate argues that the sentencing court's comments demonstrate that it failed to consider his youth as a mitigating factor. Although the sentencing court did not expressly incorporate the *Miller* factors into its sentencing decision like the sentencing court in *Boykin*, the court's comments demonstrate that it explicitly considered Tate's youth and its attendant characteristics as mitigating evidence but that it nonetheless found that the aggravating circumstances of the crime, the active role Tate played in committing that crime, and Tate's postoffense conduct warranted a 40- to 60-year sentence. As in *Boykin*, this was not an abuse of discretion.

---

[56] Although the sentencing court briefly stated that Tate was "no different than" two of his other codefendants—including Stanton-Lipscomb, who was 18 years old at the time of the shooting—that statement was not clearly erroneous. Taken in context, the court's statement is a reflection of its conclusion that Tate, despite being a juvenile, should be held equally accountable for his intentional acts. Indeed, Tate was convicted of first-degree premediated murder under an aiding-and-abetting theory, and our Legislature has chosen to treat offenders who aid and abet the commission of an offense in exactly the same manner as those who directly commit the offense. See MCL 767.39.

[57] *People v Tate*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 338360), pp 7-8 (brackets omitted).

Ultimately, just as the Court in *Jones* rejected the defendant's argument "rest[ing] on the assumption that meaningful daylight exists between (i) a sentencer's discretion to consider youth, and (ii) the sentencer's actual consideration of youth,"[58] the majority opinion's holding suffers the same flaw: *requiring* sentencing courts to actually (and to a certain level of satisfaction) consider youth as a mitigating factor even when the sentencing scheme provides courts with *the discretion* to do just that. How youth militates for or against a certain sentence represents a moral judgment left to the discretion of the sentencing court.[59] Although "one sentencer may weigh the defendant's youth differently than another sentencer or an appellate court would, . . . the key point remains that, in a case involving a murderer under [the age of] 18, a sentencer cannot avoid considering the defendant's youth if the sentencer has discretion to consider that mitigating factor."[60] MCL 769.25 and MCL 769.25a, as well as traditional sentencing principles, provide that discretion. And the record in each of these cases demonstrates that the sentencing judges— who presided over defendants' trials and thus were quite aware of their ages— appropriately exercised that discretion and considered defendants' youth in fashioning sentences proportionate to defendants and their offenses. Because neither court abused its

---

[58] *Jones*, 593 US at ___; 141 S Ct at 1319.

[59] See *Skinner*, 502 Mich at 115 n 11, citing *Kansas v Carr*, 577 US 108, 119; 136 S Ct 633; 193 L Ed 2d 535 (2016) ("Whether mitigation exists . . . is largely a judgment call (or perhaps a value call) . . . . And of course the ultimate question whether mitigating circumstances outweigh aggravating circumstances is mostly a question of mercy—the quality of which, as we know, is not strained.").

[60] *Jones*, 593 US at ___; 141 S Ct at 1319-1320.

discretion in sentencing defendants to 40 to 60 years' imprisonment, I would affirm those sentences.

## IV. CONCLUSION

"Whether read broadly or narrowly, *Miller* creates a legal rule about life-without-parole sentences. And, whether one looks at [defendants'] sentence[s] formally or functionally, [they] did *not* receive a life-without-parole sentence."[61] "*Miller*'s holding simply does not cover a lengthy term of imprisonment that falls short of life without parole,"[62] and absent a constitutional, statutory, or judicial directive, I would not extend *Miller*'s reasoning to term-of-years sentences under MCL 769.25 and MCL 769.25a. Although the majority opinion purports to limit its holding to juvenile homicide offenders sentenced under those statutes, the implication of today's decision is far greater. Indeed, the majority opinion repeatedly suggests its ruling applies to *all* young offenders— regardless of the severity of their crimes, the sentence imposed, or their juvenile status.[63] I disagree with this Court's continued extension of *Miller* beyond the life-without-parole context for juvenile homicide offenders.[64] For the reasons stated, I would not extend *Miller*

---

[61] *Atkins v Crowell*, 945 F3d 476, 478 (CA 6, 2019).

[62] *Id*.

[63] See *ante* at 12 ("Without considering the mitigating factors of youth, then, a sentence cannot adequately address the reformation of the offender."); *ante* at 13 ("Given that youth is a mitigating factor, it will inevitably factor into *Snow*'s four considerations.").

[64] See *People v Stovall*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162425) (ZAHRA, J., dissenting, joined by VIVIANO and CLEMENT, JJ.) (disagreeing with the extension of *Miller*'s reasoning to parolable life sentences for juvenile homicide offenders); *People v Parks*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162086) (CLEMENT, J., dissenting, joined by ZAHRA and VIVIANO, JJ.) (disagreeing with the extension of

23

to this whole new class of sentences. Instead, traditional sentencing considerations should apply when the sentence to be imposed on the juvenile homicide offender is less than life without parole. I would also affirm the 40- to 60-year sentences of these two youths. Because the majority concludes otherwise, I dissent.

Brian K. Zahra
David F. Viviano

*Miller*'s reasoning to mandatory life-without-parole sentences for 18-year-old homicide offenders).